CITY OF ATCHISON v. WM. L. CHALLISS, *et al.*

9    603
53   317

9    603
78   253

1. CITIES; *Sewers and Drains.* Where a city constructs a sewer or drain, for the purpose of carrying off surface-water, it is not bound to construct such a sewer or drain as will be sufficient to carry off all the surface-water, in all cases and under all circumstances.

2. ———— *Liability of City.* After a city has constructed a sewer or drain, for the purpose of carrying off surface-water, it may, in its discretion,

wholly abandon or discontinue the same, and never make any further use of it; and where the city does not leave individuals in any worse condition by such abandonment or discontinuance than they would be if such sewer or drain had never been made, the city will not be liable for any injury to individuals caused by the flow of surface-water.

*Error from Atchison District Court.*

CHALLISS, DRURY & Co., merchants, brought suit against the city to recover damages for injuries sustained to their goods. The petition alleged that—

"In October 1870, and for a long time prior thereto, the plaintiffs were the possessors of a certain house and tenement, with a cellar under the same, situated on the east half of lot No. 11, in block No. 15 in the city of Atchison, on the north side of Commercial street, and between Fifth and Sixth streets, in which they carried on the business of general wholesale grocers, and in the cellar of which said building were kept and deposited large quantities of goods, wares, and general merchandise; that by the system of grading for the streets in the said city, adopted and carried out by the defendant, said Commercial street was elevated considerably above the level of the streets intersecting it, and the lots adjacent thereto, and especially said Fifth and Sixth streets, thereby causing the necessity of a culvert or underground sewer through and under said Commercial street to carry off the water which would otherwise, in consequence of such alteration and grading of Commercial street, accumulate on the lots lying on the north side of said street between Fifth and Sixth streets; that by so constructing and raising the grade of said Commercial street, and by diverting the water from its usual and natural course, it accumulated, on or about the 29th of October 1870, in a large quantity on the north of said street, and so as to flow upon and flood the premises so occupied by plaintiffs, without any negligence on the part of plaintiffs, and so inundated the same as to fill with water the said cellar of plaintiffs, and thereby destroyed a large quantity of goods, groceries, wares, and merchandise, and other property belonging to plaintiffs then being in said cellar; that the grading aforesaid was done in such manner, and the construction of the said culvert or underground sewer was so negligently, carelessly, and insufficiently done, and the omission of said defendant to repair and keep unobstructed

said sewer, and the same was so improperly kept by said defendant, as to cause the inundation of said cellar on said premises and the destruction of plaintiffs' property as aforesaid. The plaintiffs further say that after they went into the possession of said premises the said defendant undertook and did grade said Fifth street, from Commercial street to Kansas avenue in said city, (by which grading said Fifth street was elevated above the lots adjacent thereto on the west side thereof,) and neglected and refused to construct and maintain any culvert or sewer to afford an outlet for water; that, by reason of such grading, and the neglect and refusal of said defendant to construct and maintain a sufficient sewer or culvert through and under said Fifth street, (the water in its natural and usual course being thereby obstructed,) a large pond of stagnant water was formed on the west side of said Fifth street, in said block 15, thereby causing the necessity of the construction by defendant of a drain from said pond or body of water along and through the alley in said block 15, running through the center of said block to Sixth street, and also the necessity of defendant constructing a culvert or sewer under and through said Sixth street to carry off the water which would in consequence of such grading of Fifth street accumulate on the lots in said block 15; that after the construction of said drains in said alley by said defendant through said block 15, and after the construction of said culvert or sewer through and under said Sixth street, between Commercial street and Kansas avenue, by said defendant, the said defendant proceeded to grade and elevate said Sixth street between Commercial street and Kansas avenue, and in grading, filling up, and elevating said street said defendant tore up and destroyed the said culvert or sewer through which water passed from said pond in said block 15, and thereby wholly obstructed the passage and prevented the said water so accumulating in said block 15 from running through said drain, and wholly obstructed any outlet whatever for said water; and plaintiffs say that they, relying upon said defendant to protect them from any danger by reason of said drains, grading, and insufficient sewers and culverts, deposited and kept in said cellar on said premises large quantities of goods, wares, and merchandise; but said defendant, wholly disregarding the duties incumbent upon it, at the date of the grievances herein mentioned, failed, neglected, and omitted to construct drains, sewers, and culverts of sufficient capacity to carry off said water from said pond, and omitted to repair and keep unob-

structed said drains, culverts, and sewers, or to provide any means whatever for the outlet of said water running in said drains along said alley and on said premises; that, on or about said 29th of October large and excessive rains fell in said city, and a large body of water accumulated on said block 15, and the premises so occupied by plaintiffs were inundated, flooded, and overflowed, and the cellar thereof filled with water, thereby destroying a large quantity of goods, groceries, wares, and merchandise, of the plaintiffs, to their damage $1,600. Wherefore," etc.

The defendant filed a general denial. The case was tried at the November Term 1871. Verdict and judgment for the plaintiffs, for $473.62. New trial refused, and the city brings the case here for review. The facts established by the evidence, and the instructions given by the court, are sufficiently stated in the opinion.

*D. Martin*, and *C. G. Foster*, for plaintiff in error:

1. Upon the trial of the cause the defendant below asked the court to instruct the jury that if the injuries complained of arose from improving and grading of the public streets of the city, without obstructing any existing watercourse, defendant was not liable; or, in other words, defendant was not liable for damages caused by the accumulation of surface-water, and was not bound in the grading of the streets to furnish drainage for such water. These instructions should have been given. 1 Denio, 595; 5 Am. L. R., (N. S.) 33; 13 Gray 601; 15 Mo., 610; 16 Wis., 247; 2 How., 135; 4 Mich., 135; 36 N. H., 284.

The court erred in refusing to instruct the jury that the city was only required to use ordinary and reasonable care in the grading of its streets to prevent injury to private property; and if under ordinary circumstances no sewer was required to prevent the flooding of plaintiff's cellar from surface-water, but that the same was caused by an extraordinary and unusual freshet, then defendant was not liable. 6 Johns., 90; 5 Vt., 580; 26 Ill., 249; 3 Ind., 236. *Kingsley's case*, 10 Rep., 139.

The *seventh* instruction asked on the part of the city was,

that if the injury complained of was caused in part by the failure of the city to provide sufficient drainage, and partly on account of excavations made by plaintiffs' landlords, or other persons, contiguous to the premises, thereby removing the barrier that would have prevented the flooding of plaintiffs' cellar, then the plaintiffs could not recover. This instruction should have been given. 32 Me., 46; 51 id., 127; 4 Gray, 395; 7 Gray, 100.

2. The court in the charge to the jury said the defendant had the right to grade its streets without reference to any water that might collect by falling rains; but if defendant ever undertook to control such water, by carrying it off in any kind of artificial drains, then they were bound to control such water in such manner as not to injure the plaintiffs — they were bound to make their drains of sufficient capacity to carry all the water which might fall, and keep the same in repair. We think the distinction drawn by the court as to the city's liability, between cases where an attempt was made to provide drainage, and where no such effort was made, is not supported by reason or authority. See *Kingsley's case,* supra, and authorities cited.

*Horton & Waggener,* for defendants in error:

1. In the case of the *City of Leavenworth v. Casey,* McCahon's R., 124, 129 to 134, the court held in a similar case, that "The city had and has the right to grade streets, and construct sewers and drains; but this right is subject to liability for all damages that individuals may sustain by an improper exercise of that right. And if the city so graded Shawnee street, in front of plaintiff's property, as necessarily to flood that property, when it rains to a great depth, where it was dry before, and put in an improper sewer and drain to draw off the water, and it dammed up and flooded on him, and he has suffered damages thereby, the plaintiff is entitled to recover said damages." And see also, 3 Hill, 612, 615; 3 N. Y., 463 to 469; 9 N. Y., 163; Shear. & Redf. Neg., p. 188, § 151.

In *McCombs v. Town Council of Akron*, 15 Ohio, 474, the court held that "a municipal corporation is liable for injuries acting within the scope of its corporate authority, and without any circumstances of negligence or malice." It is conceded in the case at bar that the mayor and city council of Atchison had the right to grade its streets, and construct sewers and drains; and it appearing from the bill of exceptions that the city having elected to exercise the power of constructing drains and sewers, for the purpose of controlling the water in block 15, it must be held responsible for a complete and perfect execution of such power.

2. The court properly refused the seventh instruction asked for by plaintiff in error, because it contains a conclusion of fact not warranted by the evidence, and which if given under any circumstances would tend to mislead the jury. 1 Kas., 42, 47; 1 Eden (N. Y.) Sel. Cases, 95.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought for damages to certain goods caused by the accumulation of surface-water in the cellar of defendants in error, plaintiffs below. The only errors complained of are those supposed to have been committed by the court in charging and in refusing to charge the jury. For this reason only, so much of the evidence as it was supposed would show the relevancy of the instructions given, and those refused, has been brought to this court. The verdict of the jury was a general verdict, and no special findings of fact were made. Hence we shall not attempt to comment upon the evidence, nor upon the facts of the case, any further than is necessary in reviewing the instructions, but will confine our remarks to the instructions given and those refused.

The evidence brought to this court tends to prove that the plaintiffs' goods were injured in the following manner: The cellar of the plaintiffs was located near the middle of the south side of block fifteen in the city of Atchison. Sixth street was situated immediately west of said block. The

ground on said block, near the southwest corner thereof, was lower than it was anywhere else. Sixth street was graded so as to prevent the surface water from flowing from said block, and so as to cause it to accumulate on this low ground, and there produce a pond. About the last of October 1870 excessive rains fell and raised this pond much higher than usual. From this pond the water passed eastwardly through several cellars successively, and finally reached the plaintiffs' cellar, and there caused the injuries complained of. The evidence also tends to show that at one time the city put a box culvert under Sixth street, about half the width of the street, for the purpose of carrying off surface-water from the north half of said block, but "no provision was ever made by the city for draining the south half of said block." Afterwards the city graded Sixth street, and at the same time so filled up said box culvert that it was never afterwards used as a culvert. Said pond was filled by water flowing from both the north half and the south half of said block.

The rulings of the court below in charging the jury were unquestionably erroneous. But whether the errors affected the substantial rights of the defendant below, (plaintiff in error,) is more difficult for us to determine. After a careful examination of the whole case we have however come to the conclusion that we cannot say that said errors did not affect the substantial rights of the defendant below, but on the contrary we think we can say that they did. We think that they were not only errors of law, but that they tended to mislead the jury as to the facts. The judgment must therefore be reversed for said errors. The substance of the charge, as gathered from the instructions given and from those refused, was in brief about as follows: Whenever a city attempts to carry off surface-water by constructing an artificial drain of any kind, of any size, or of any capacity, whether for temporary purposes or for permanent use, the city thereby becomes and forever remains absolutely responsible as an insurer against any and all damages that may be caused by the flow of surface-water, whatever may be the extent of the rains;

39

that if for want of a sufficient drain, certain water for which the city is responsible, whether much or little, contributes, along with other water, however much, for which the city is not responsible, to damage certain goods, the city is liable; that a city has no right for any cause to ever abandon a drain once constructed, but if the city has ever constructed *any kind of a drain* they must keep and continue in operation a *sufficient drain* forever.

We suppose it is well settled that a city has a right to grade its streets, and if done with proper care it will incur no liability of any kind, or to any person, whatever inconvenience may result to individuals. It may incur liability by carelessness or negligence in grading a street, or by so grading a street as to stop up or obstruct a natural watercourse, or by carelessly or negligently allowing a drain or sewer already constructed to become filled up or obstructed so as to cause injury to a private individual; but it cannot incur liability by simply grading a street so as to stop the passage of merely surface-water, and thereby cause such water to accumulate on the premises of some private individual. It is undoubtedly true, that a city, in grading its streets, is bound to keep open a sufficient channel for a natural watercourse so as not to obstruct in the least the waters flowing therein; but it is equally true, and as well settled, that a city is not bound to construct any channel, culvert, sewer, or drain, to carry off merely surface-water. The construction of sewers and drains to carry off merely surface-water is purely discretionary with a city. It may construct them or not, at its option, and just as it may think best. With these views we think the rulings of the court below harmonize, and are therefore to this extent not erroneous. But the court below went further. Upon its rulings we think the following questions among others are raised, to-wit: *First.*—When a city constructs a sewer or drain for the purpose of carrying off surface-water is it bound to construct such a sewer or drain as will be sufficient to carry off all the surface-water, in all cases, and under all circumstances? *Second.*—After a city has constructed

a sewer or drain, may it ever for any cause abandon or discontinue it, and make no more use of it? We must answer the first question in the negative, and the second in the affirmative.

First: Whether a city will construct drains of any kind, and where it will construct them, are purely discretionary. This principle is so well settled that it is not necessary to cite authorities in support of it. This discretionary power exercised by cities is, by many courts, considered as a kind of *quasi* judicial power. Now, if a city is not bound to construct a drain of any kind, by what system of reasoning can it be made to appear that if it shall construct a drain it must construct one that shall be sufficient in all cases, and for every emergency? Any drain is better than no drain. Any drain instead of being an injury to a party is, so far as it operates, a positive benefit. If it carries off half the water that falls upon his premises, instead of the whole, how can that be said to be an injury? Is it not an actual benefit to the extent that it operates? And if a benefit, upon what principle can the city be made liable? A city in exercising its discretionary or *quasi* judicial powers acts not merely for a private individual or individuals, but for the general welfare of all its citizens. And in constructing drains it may construct them so as to drain the streets or alleys only, or so as also to drain the property of its citizens; and in draining the property of its citizens the drains may be so constructed as to carry off all the water that may fall or accumulate on the premises of an individual, or only a portion thereof; and they may be so constructed as to carry off all the water that may fall or accumulate on the premises of one person, and only a portion of what may fall or accumulate on the premises of some other persons. We think it is true that if a city constructs a drain every individual interested in the drain has a right to rely upon the drain operating to the extent of its capacity, and if the city, through negligence, allows the drain to become obstructed so that injury results to some private individual, the city as a rule becomes liable. But we know of no prin-

ciple that would give any party a right to demand or expect that the drain should operate to an extent beyond its capacity. This question we think has been fully settled by the decisions: *Mills v. City of Brooklyn*, 32 N. Y., 489; *Barny v. City of Lowell*, 8 Allen, 127; *Dermont v. Mayor of Detroit*, 4 Mich., 435, (and other cases cited in brief of plaintiff in error.) Nor has any person the right to demand or expect that the drain shall carry water from his premises unless it was constructed for the purpose of draining a street or alley. Alone he has no right to expect or demand that it shall drain his premises. In the case of *Leavenworth City v. Casey*, McCahon, 125, 132, a different doctrine is laid down. It is there laid down that "a city is bound to make a sewer of sufficient size to guard against accidental obstructions and extraordinary freshets; and it is no excuse for a failure so to construct it, that the engineer, or other person who constructed it, thought it sufficient." This proposition never was the law, when applied to surface-water, as was done in that case; and the authorities there referred to do not sustain any such proposition. *The Rochester White Lead Co. v. City of Rochester*, 3 N. Y., 463, 466, which is the leading case there referred to, was a case where the city constructed a culvert which was too small and too unskillfully built to allow all the water of a *natural watercourse* to pass. (See 32 N. Y., 499.) *The Mayor of New York v. Furze*, 3 Hill, 612, 615, 616, another case there cited, was a case where the city through negligence did not keep certain basins, culverts, and sewers, that had been previously built, in repair, and therefore said basins, culverts, and sewers could not operate to their full capacity. (See 32 N. Y., 499.) *The People v. Corp. of Albany*, 11 Wend., 539, 543, was an indictment for not removing a nuisance created in a basin of the Hudson river at the termination of the Erie canal. The other cases there referred to are alike inapplicable to that case, or to this. These cases were all decided before the case of *Mills v. City of Brooklyn*, 32 N. Y., 489, and those nearest applicable were reviewed in that case.

Second: After a city has constructed a drain or sewer to carry off surface-water may it ever, for any cause, abandon or discontinue it, and make no further use of it? This is probably a more important question, so far as this case is concerned, than the other. Upon this question we have not been referred by counsel to any authorities, and we have not taken the time to hunt for any. Indeed, it seems scarcely necessary to hunt for authorities, for the proposition that a city has such power seems to be only a necessary corollary from the proposition that a city has the power to construct drains when and where it chooses, of the kind and capacity it chooses, or not to construct any at all, if it so chooses. The proposition of abandoning or discontinuing a drain, or filling it up (as in this case) with the intention never to use it again, is a very different proposition from the one of negligently allowing a drain to become obstructed. For the first, the city is not liable; for the second, it generally is. The first is the exercise of that discretionary, or *quasi* judicial power, possessed by cities; the second is the neglect to perform a ministerial duty. Cities may often make mistakes in the first instance, in constructing drains. And when they do, it would seem that they should have the power to correct their mistakes, and therefore that they should always have the power to change and alter drains; that they should always have the power of abandoning or discontinuing certain drains and building others. Otherwise cities would often be very much embarrassed in doing what would seem to be best for the general welfare of the city; and could never correct mistakes or errors previously made, if any person should object. Of course cities have no power, discretionary or otherwise, to create nuisances. And they probably could not abandon or discontinue a sewer or drain so as to leave an individual in a worse condition than if no sewer or drain had ever been constructed. It is claimed that a city is liable wherever a private individual would be liable under the same circumstances. This is generally true, but not always so. But if it were always true, would an individual be liable in a case like the

one at bar? Every individual has, or ought to have, absolute, exclusive, and uncontrolled dominion over his own property, subject only to the qualifying maxim, *Sic utere tuo, ut alienum non lædas.* He is the owner of the soil, and of everything connected therewith, and his dominion over the same reaches to an indefinite extent upwards and downwards. He owns all the water that falls upon his own soil, and may retain it without allowing any portion thereof to reach the premises of a lower proprietor. *Livingston v. McDonald,* 21 Iowa, 160, 166, 167, and cases there cited. And we know of no principle of law or equity that would prevent him from so filling up or raising his own premises, if such were necessary for the better enjoyment of the same, so that no water except what should fall upon his own premises should ever reach the same, whatever inconvenience it might cause an upper proprietor. *Livingston v. McDonald,* supra. And this seems from the authorities to be a continuing right, which the proprietor of real estate never surrenders except by voluntary grant.

There are other questions in this case; but as we have not all the evidence before us, and cannot know from the record precisely what the facts are, we shall not now consider them. Among those questions are the following: *First.*—If the plaintiffs knew the condition of the said block, the streets, the culvert, the pond, the cellars through which the water passed in getting to their cellar, and the condition of their own cellar, did not their own negligence in storing the goods in said cellar, and in allowing them to remain there during such excessive rains, contribute as much or more to the injuries complained of as the negligence of the city in not keeping open or constructing sufficient drains? and if so, can they recover? *Second.*—As the city was responsible for the rain that fell on the north half of said block only, and not for what fell on the south half of said block, and as it was the water from both halves of said block, acting together, which caused the injuries complained of, is the city liable? (*Moore v. Abbott,* 32 Maine, 46; *Moulton v. Inhabitants of Sandford,*

51 Maine, 127; *Marble v. The City of Worcester*, 4 Gray, 395.
But see *Atchison v. King*, ante, p. 550.) Only a small portion
of the water which contributed to the injuries complained of
may have come from the north half of said block, while
nearly all of it may have come from the south half of said
block. Chief Justice Shaw, in the case of *Marble v. City of
Worcester*, 4 Gray, 397, lays down the following rule: "The
general rule of law, we understand, is, that where two or
more causes concur to produce an effect, and it cannot be
determined which contributed most largely, or whether with-
out the concurrence of both, it would have happened at all,
and a particular party is responsible only for the consequences
of one of these causes, a recovery cannot be had, because it
cannot be judicially determined that the damage would have
been done without such concurrence, so that it cannot be
attributed to that cause for which he is answerable." This
may be the rule of law; but all that we wish now to say, is,
that if such is the rule of law we think it must have many
exceptions. We shall not now attempt to determine what
the rule is for this case, because we have so few of the facts.
Judgment reversed, and cause remanded for a new trial.

All the Justices concurring.