## LUELLA L. GOULD v. THE CITY OF TOPEKA.

1. STREETS — *Liability for Unsafe Condition.* A city is liable for any injury to private individuals caused by the negligence of its officers in not keeping its streets in a safe and proper condition.

2. UNSAFE STREETS, *Not to be Planned.* And a city has no more right to plan or create an unsafe and dangerous condition of one of its streets than it has to plan or create a public or common nuisance.

3. STREETS, *City Must Keep in Safe Condition.* The control of the public streets of a city is vested in the city, and its exercise by the city is not wholly discretionary, or judicial, or quasi-judicial, or legislative, and is not divided or shared with any other corporation, or board, or tribunal, but is absolute and exclusive in the city itself, and it is not conferred upon the city merely as a benefit which it may exercise, or not, at its option or discretion, but it is imposed upon the city also as an absolute and mandatory duty, which it has no right to evade or avoid. Generally, cities must keep their streets in safe and proper condition at their peril.

4. CITY, *When Liable for Unsafe Streets, When Not.* Where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a court, upon the facts, can say, as a matter of law, that it was dangerous and unsafe, the city should generally be held liable for any resulting injuries to individuals; but where, upon the facts, it would be so doubtful whether the street as planned or ordered by the governing board of the city was dangerous or unsafe, or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt might properly be given to the city or to the governing board that planned it, and the city held not liable.

5. CITY, *When Protected from Liability.* Where it is claimed that the city should be protected for the reason that the condition of the street was so brought about in accordance with a plan previously adopted or subsequently ratified by the city or its governing board in the exercise of a judicial, quasi-judicial, legislative or discretionary power, it must be shown that the exact matter was under consideration by the governing board, and that after due deliberation such plan was expressly adopted, or expressly ratified.

6. CITY, *Not Presumed to have Planned a Dangerous Street.* If a city or its governing board should order that a high and narrow embankment with precipitous sides should be made in a public street for the purpose that the travel should pass over the embankment, and should say nothing concerning railings, guards, or other barriers, and nothing concerning street lamps or other lights, to prevent persons in the night-time from falling or driving off the embankment and thereby being injured, it should not be held that the city had planned or ordered that no such railings, guards, barriers, lamps or lights should be used. There should be no presumption that the city authorities had ordered or planned that a public street should be dangerous.

*Error from Shawnee District Court.*

ACTION brought by *Luella L. Gould* against *The City of Topeka*, to recover damages for personal injuries alleged to have been caused by reason of the unsafe and dangerous condition of a certain public street in that city. Trial at the April Term, 1883, and verdict and judgment for the defendant. The plaintiff brings the case to this court. The opinion states the facts.

*W. P. Douthitt*, and *G. N. Elliott*, for plaintiff in error.

*A. B. Quinton*, and *J. D. McFarland*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Luella L. Gould against the city of Topeka, to recover damages for personal injuries alleged to have been caused, on the night of August 21, 1879, by reason of the unsafe and dangerous condition of a public street in the city of Topeka, named "Kansas avenue." At that time the plaintiff was riding in a carriage on said street, up an embankment which leads to the south end of the bridge which spans the Kansas river, and the carriage was overturned and the plaintiff thrown therefrom and down the embankment on the east side thereof, and the injuries of which she now complains were thereby produced. The only wrong alleged against the city is the construction and permitted existence of the said embankment, which is alleged to be high and narrow, and the negligence of the city in permitting it to remain unprotected and not guarded by any railings or other barriers, and without street lamps or other lights during the night. The case was tried by the court and a jury, and the court gave the following (among other) instructions:

"13th. It can make no difference in this case whether the made and traveled portion of the street was wide enough to accommodate the ordinary traffic and travel over the same, unless its narrowness was the cause of the plaintiff's being driven over the narrow track, and that such narrowness was caused by the negligent grading and filling of Kansas avenue, at the place where the accident occurred.

"14th. I further instruct you, gentlemen, that such negligence cannot be predicated upon the plan of a public work, but it may be predicated upon the construction and subsequent management of such a work. If therefore you find from the evidence, that the defects complained of in the plaintiff's petition did in fact exist in Kansas avenue, at the place where it is alleged the accident happened to the plaintiff, [and] were defects existing in the plan of grading and filling Kansas avenue, as adopted and executed by the proper authorities of the city, then the plaintiff cannot recover in this action. But if you find from the evidence, that such defects [arose] from a negligent and careless construction of the grading and filling, after the plan of construction had been fixed upon, then the

plaintiff may recover, provided the injuries complained of were caused directly by such last-named negligence, and the plaintiff, and the driver of the team in which she was riding, were themselves without fault contributing to such injuries.

"15th. If you find from the evidence, that at the time of the alleged accident, Kansas avenue, at the place where such accident is alleged to have occurred, was in a defective condition, and that such defective condition was caused by said avenue having got out of repair, either by reason of travel upon it, or otherwise, after the completion of the work of grading and filling, and not by reason of negligence in the grading and filling thereof as originally done, then the plaintiff cannot recover in this action.

"16th. If the work of grading and filling Kansas avenue, at the place of the accident, was done by the direction of the defendant, and after its completion the defendant, with knowledge of the plan on which said work had been done, accepted it by permitting it to stand, and to be used as a public street, this would be a ratification of the plan of said work, and would in effect be the same as though the plan of said work had first been adopted, and the work executed in accordance with said plan so adopted."

Several other instructions were given, but these are the only ones of which the plaintiff now complains. The plaintiff also asked the court to give several other instructions, which the court refused, and of this refusal the plaintiff now complains; but we do not understand that any question is now raised, upon the instructions refused, different from or in addition to the questions raised upon the instructions given. The jury found a general verdict in favor of the defendant, and the plaintiff moved the court for a new trial, upon various grounds, which motion was overruled, and the court rendered judgment in favor of the defendant, and against the plaintiff for costs; and this judgment the plaintiff now seeks to have reversed.

That a city is liable for any injury to private individuals, caused by the negligence of its officers in not keeping its streets in a safe and proper condition, has been maintained and promulgated by the supreme court of Kansas nearly ever since its first organization, and such is now the unquestioned doctrine

in this state; and nearly all the courts of last resort in all this country also recognize, sanction, approve and promulgate this very same doctrine. It is believed that the decisions of the supreme courts of New Jersey, Michigan and Texas furnish the only exceptions to this almost universal agreement among the courts. (*Pray v. Mayor, &c.*, 32 N. J. L. [3 Vroom] 394; *Detroit v. Blackeby*, 21 Mich. 84; *McCutcheon v. Homer*, 43 id. 483; *City of Navasota v. Pearce*, 46 Tex. 525.)

But it is claimed by counsel for the defendant that municipal corporations are endowed with various powers, among which are, first, those which are discretionary and judicial, quasi-judicial or legislative in their character; and, second, those which are mandatory and ministerial in their character; and that while municipal corporations may be held liable for the wrongful exercise or the wrongful failure to exercise those powers which are mandatory and ministerial in their character, such as negligently failing to keep their streets in safe and proper condition, yet that no liability can be incurred by the exercise or failure to exercise those other powers belonging to the first class above mentioned, as where the city orders or plans a street improvement, or a change or alteration of such street, and the work is done accordingly, even if the exercise of such powers or failure to exercise the same should be ever so wrongful. It is claimed that cities may adopt a plan for public improvements or ratify such plan after the improvements have been made, and that the adoption or ratification of such plan will come within the first class of powers above mentioned; that no negligence can be predicated upon the adoption or ratification of such plan, nor upon the improvements themselves if made in accordance with the plan; nor can the city be held liable for any injuries to individuals resulting from the plan, or from the improvements if made in accordance with the plan, even if the same were ever so defective and dangerous; and it is further claimed that the city can be held liable only for the negligent construction of the public works, or the negligent management and control thereof after the same have been made; and this for the reason that

these matters, and these only, can possibly come within the second class of powers above mentioned.

We agree with counsel in their division of the powers of municipal corporations, and generally that cities are not liable for the exercise or non-exercise of the first class of powers above mentioned; but we do not agree with counsel in their application of the rule with respect to injuries to private individuals, resulting from the defective and dangerous condition of the public streets of cities. In our opinion, a city has no more right to plan or create an unsafe and dangerous condition of one of its public streets than it has to plan and create a public or common nuisance; and it is admitted that it has no right to do this. (2 Dillon's Mun. Corp., 3 ed., § 660.) The rule contended for by counsel for the defendant has been applied to various cases, as follows: It has been applied to city improvements, and the cities held not liable, in cases where the property of individuals outside of the streets has been flooded and injured on account of the insufficiency of sewers or drains. (*City of Atchison v. Challiss*, 9 Kas. 603; *Steinmeyer v. City of St. Louis*, 3 Mo. App. 256; *Mills v. City of Brooklyn*, 32 N. Y. 489; *Darling v. Bangor*, 68 Me. 108; *Child v. City of Boston*, 86 Mass. [4 Allen] 41; *Van Pelt v. City of Davenport*, 42 Iowa, 308.)

The rule has also been applied, and a city held not liable, in a case where water on adjoining property was polluted by means of a sewer or drain. (*Merrifield v. Worcester*, 110 Mass. 216.) The rule has also been applied, and a city held not liable, in a case where, by the digging of a ditch, the rent of a person's house was diminished. (*Lambar v. City of St. Louis*, 15 Mo. 610.) And also to the same effect where, by the digging of a ditch and the construction of a culvert on the sidewalk, the plaintiff's abutting property was damaged. (*White v. Corporation of Yazoo City*, 27 Miss. 357.) The rule has also been applied, and a city held not liable, in a case where a school-child was injured by an unsafe stair-case. (*Hill v. Boston*, 122 Mass. 344.) And the rule has also been applied, and cities held not liable, in New York and Michigan, where

injuries occurred to individuals on account of the unsafe and dangerous condition of the streets. (*Urquhart v. City of Ogdensburg*, 91 N. Y. 67; *City of Detroit v. Beckman*, 34 Mich. 125; *City of Lansing v. Toolan*, 37 id. 152.)

The Michigan cases, however, are not entitled to much weight as authority, for the reason that in that state, as before stated, the supreme court has gone to the extent of holding that cities are not liable in any case to private individuals for injuries resulting from defective streets, whether the defect arises from the *neglect* of the city and its officers to keep the streets in safe and proper condition, or is the result of a defect in the original plan adopted by the city council for the construction of the improvements. (*Detroit v. Blackeby*, 21 Mich. 84; *McCutcheon v. Homer*, 43 id. 483.)

This leaves only the New York case as being entitled to consideration in holding that the rule of the non-liability of cities should be applied where injuries have resulted to individuals on account of the unsafe and dangerous condition of the public streets, so made dangerous in accordance with a plan previously adopted by the governing board of the city. But even in New York it was doubted as late as in 1876 whether the rule should be so applied. (*Clemence v. City of Auburn*, 66 N. Y. 334.) In that case it was doubted whether the city would be liable or not, even if the work had been done in exact accordance with the directions of the common council of the city. And we have the authority of the highest courts of two states — Illinois and Wisconsin — holding that the rule should not be applied in any such cases. (*City of Chicago v. Gallagher*, 44 Ill. 295; *City of Chicago v. Langlass*, 66 id. 361; *Prideaux v. City of Mineral Point*, 43 Wis. 513.) These cases seem to wholly ignore all distinction made by some courts between injuries resulting from *a defective plan* of the work and injuries resulting from *negligence* in the execution of such plan, or in the control and management of the work after its completion; and they hold that in all cases where injuries occur to private individuals from the unsafe and dangerous condition of the public streets of a city, the city should be held

liable; and this seems to be more in harmony with reason and justice than the other rule. (2 Thomp. on Neg. 734, 735, 736, §§ 2, 3, and notes.)

In Kansas, we have no special reason for following this rule of the Wisconsin and Illinois courts. In Kansas, as well as elsewhere, cities do not own the public streets. In Kansas, the fee-simple title to the streets is vested in the counties in which the cities are situated, and is so vested, not for the benefit of the counties or the cities merely, but also for the benefit of the entire traveling public, and the cities are invested only with the control and management of the streets; and this control and management is not merely for the benefit of the cities themselves, but is also for the benefit of the entire traveling public. This control of the streets, however, is not wholly discretionary, or judicial, or quasi-judicial, or legislative, and is not divided or shared with other corporations, boards, or tribunals, but it is absolute and exclusive in the cities; and, as we think, it is not conferred upon them merely as a benefit which they may exercise, or not, at their option or discretion, but is imposed upon them also as an absolute and mandatory duty, which they have no right to evade, or avoid. Generally, they must keep their streets in a safe and proper condition at their peril. And while we recognize the rule contended for by the defendant's counsel, and think that it may have application in some cases, yet we do not think it has very much room for application where injuries occur to private individuals on account of defective and manifestly dangerous public streets. The control of the streets of cities was not put into their hands for the purpose that they might plan or order that the streets should be made dangerous or unsafe for the public to travel thereon; nor was such control put into their hands for the purpose that they might plan or order that the streets should remain in an unsafe or dangerous condition if previously dangerous; but such control was given to them for the sole purpose that they should make and keep the streets safe and convenient for the traveling public; and we think it was put into their hands as a mandatory duty,

which they have no right or discretion to evade or avoid. If a city should plan or arrange that a street should be made unsafe and dangerous, we would be inclined to think that it would so transcend its powers as given to it by the legislature, and so violate its duties as imposed upon it by the legislature, that it would be liable for any injury which might occur to any individual by reason of such unwise action. Such action would be substantially the same as planning and creating a public nuisance. Can a city, by planning that a cistern should be left uncovered in the middle of a public street, avoid all liability for injuries that may occur by reason of some person's falling into it in the night-time, without fault on his part, when, on the other hand, it would be liable if the cistern were left uncovered by the person who constructed it, or was afterward uncovered by some other person, and notice of its condition had been given to the city officers? Is such a distinction founded in reason? (2 Thomp. on Neg., 734, 735, 836, §§ 2, 3, and notes; id. 766, 767, 768 and notes.)

After a careful consideration of this entire question, we have come to the conclusion that where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a court, upon the facts, can say as a matter of law that it was dangerous and unsafe, the rule contended for by the defendant should not have any application, and the city should be held liable; but where, upon the facts, it would be so doubtful whether the street, as planned or ordered by the governing board of the city, was dangerous or unsafe or not—that different minds might entertain different opinions with respect thereto—the benefit of the doubt might properly be given to the city, or rather to its governing board that planned or ordered that the street should be placed in such a condition, and the rule should be held to apply, and the city should not be held to be liable. Before leaving this question, we think we should call attention to the fact that the principal part of the reasoning in those cases above cited which hold that a city is not liable for consequential damages to property situated outside of the streets by reason of sewers, drains,

ditches, etc., is not applicable to cases where the injuries are to individuals traveling upon the public streets, and where the injuries are caused by some manifestly dangerous thing in or forming a part of the public streets. Nor is the principal part of the reasoning in one of this class of cases like the principal part of the reasoning in the other; for in the one class of cases the city has a legal right to do just what it has done, while in the other it has no such right; and a cause of action can seldom, if ever, be based upon the lawful exercise of an unquestioned legal right, while it may generally be based upon a wrong. See the case of the *City of Atchison v. Challiss*, 9 Kas. 603, heretofore cited, for the reasoning where the city is held not to be liable. We shall now pass to another question.

We would further think that, in order that the city should be protected from liability on account of the work being executed in accordance with a plan previously adopted by the city, the plan should be shown to have been expressly adopted, and adopted by the city council or other board having the control of the political, the legislative, and the governmental affairs of the city. To say that it has been adopted because the board has given no expression to the contrary, would not do. In order that the city should be protected from liability, it is necessary that its board should have the exact matter under consideration, and, after due deliberation, should expressly order that the thing be done; or if the thing has already been done, then that it should be ratified. Suppose that the city council should order that a cistern be constructed in some public street, and say nothing about the cover: we would think that it should not be held that the want of a cover should be included as a part of the plan in constructing the cistern; or, in other words, that the city council had planned that there should be no cover; and if the cistern were built in accordance with the order of the board, but with no cover, and injuries should result because thereof, we would think that it should not be held that the city was not liable for the injuries. Or if the city should order that a high and narrow embank-

ment with precipitous sides should be made in a public street for the purpose that the travel should pass over the embankment, and should say nothing concerning railings, guards, or other barriers, and nothing concerning street lamps or other lights to prevent persons in the night-time from falling or driving off the embankment and thereby being injured, we would think that it should not be held that the city had planned or ordered that no such railings, guards, barriers, lamps or lights should be used; but we would think that it should be held that the city had made no order with reference thereto; and then we would further think that if no such railings, guards, barriers, lamps or lights were used, and thereby injury should result, the city should be held to be liable. Before the court should hold that a street manifestly unsafe and dangerous was so planned and so ordered by the governing authorities of the city, the courts should be able to say from the city records that it was so planned and so ordered by the city authorities. There should be no presumption that the city authorities ordered or planned that a public street should be dangerous. If a cistern or an area within the sidewalk should be left uncovered and remain so for a long time, it should not be presumed or held that such authorities adopted the plan that it should remain uncovered, although it might be proved that all the city authorities had knowledge of the same. Or if a part of a bridge over a deep stream with precipitous banks should be partially washed away, still leaving it possible in the day-time for teams to cross with great care, but dangerous and hazardous in the night-time, and no precaution should be taken by the city authorities to guard against danger, it should not be presumed or held that the city authorities, in their legislative or judicial capacity, or even as an exercise of their discretionary powers, had planned or ordered that the bridge or stream should so remain in its hazardous and dangerous condition. Courts should not allow any but the most formal evidence to be introduced to prove that the city authorities had planned or ordered or ratified any such dangerous place within their streets. Courts should not pre-

sume without formal proof that the governing board of a city had deliberately done wrong, and especially not for the purpose of relieving the city from the consequences of a wrong for the doing of which it would be held to be not liable if it had done the wrong deliberately, but liable if it had done it merely heedlessly or carelessly.

We think the court below erred in giving the foregoing instructions. There was no evidence showing that the city, by its council or otherwise, had ever expressly planned or ordered that the street where the plaintiff's injuries occurred should be made or left in the condition in which it then existed; and the evidence does not show that the city, by its council or otherwise, ever expressly ratified any such condition of the street. The only evidence upon this subject was that the street had remained in that condition for some years, and that the mayor and two members of the city council had knowledge of its condition.

The judgment of the court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.