No. 33,978

Emma Blankenship, *Appellee*, v. The City of Caney, *Appellant.*

(87 P. 2d 625)

Opinion filed March 4, 1939.

*George H. Wark*, city attorney, and *Chester Stevens*, of Independence, for the appellant.

*Charles D. Welch* and *Dallas W. Knapp*, both of Coffeyville, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries sustained in a fall on a crosswalk in the defendant city. From a judgment against it the city appeals, specifying as error certain rulings of the trial court which will be mentioned later.

Omitting formal allegations, it was alleged that at a certain intersection of streets,

"The city maintained and kept a crosswalk running east and west on the south side of said intersection, composed of brick, and that it kept and maintained in said crosswalk a board crossing over a ditch about twenty-seven inches deep, at the west side of said crosswalk, and near the property line; that said brick crosswalk was about 4⅓ feet wide, and that said wooden crossing over said ditch in said crosswalk was narrower than the crosswalk; that there were no guardrails on said crosswalk to protect those using the same from stepping or falling off into said ditch, and that said unprotected crosswalk at night was dangerous by reason of the fact that the city for a long time prior to plaintiff's injury had discontinued electric lights which it had maintained theretofore at said intersection."

and it was further alleged that on January 9, 1937, about nine o'clock p. m. it was very dark, plaintiff had been visiting a friend and to return home she had to walk upon the crosswalk and—

"That due to the fact that there were no guardrails on said crosswalk and no light whereby she could see and guide her step, she stepped off of said crosswalk and was thrown into said ditch,"

and that she sustained injuries as set out in detail; that she had filed written notice of claim with the city which failed to allow or disallow the claim.

The notice of claim set out the date and place the injuries were sustained and stated:

"That said injuries were due to the negligence of the city of Caney in failing at said time to maintain a street light at the corner of First and McGee streets, and in failing to maintain a guardrail on said sidewalk crossing or bridge so that said sidewalk might be safe for one to walk thereon and thereover."

The answer was a general denial, a specific denial of negligence on the part of the city, and a charge of contributory negligence.

At the trial the defendant objected to introduction of any evidence for the reason the allegations of the petition and the facts stated in the opening statement were insufficient to state a cause of action. This motion was denied, and the ruling is specified as error.

Thereafter plaintiff offered her evidence to which defendant demurred for the reason no cause of action was proved. This demurrer was overruled and the ruling is specified as error. The defendant then offered its proof, the plaintiff her rebuttal, and the cause was submitted to the jury, which returned a general verdict for plaintiff and answered special questions submitted. Defendant filed its motion for a new trial and for judgment *non obstante veredicto*, but withdrew its motion for a new trial. Its motion for judgment was denied and that ruling is specified as error.

Appellee objects to any consideration of the first assigned error for the reason the opening statement of counsel is not included in the abstract. The objection would be good if it were necessary that we consider the opening statement. Essentially, the question raised by appellant's objection to the reception of evidence and by its demurrer to plaintiff's evidence is whether the facts as pleaded in the petition and as developed in the evidence showed the city legally at fault because the portion of the crosswalk was not reasonably safe, in that (a) it was improperly constructed, (b) the plank portion over the ditch hereafter mentioned was not protected by guard rails, (c) there was no street light at the intersection of the streets over one of which the crosswalk passed.

The allegations of the petition have been noted above. Omitting reference to matters not here material, plaintiff's evidence showed the following: McGee street runs north and south and intersects First street, which runs east and west. On the southwest corner of the intersection was the residence of Mrs. Robbins. A brick sidewalk passing along the north side of her property continued east across McGee street as a crosswalk. There was a ditch along the west side of McGee street and at the point where the crosswalk met the ditch, the ditch was about twenty-seven inches deep and the portion of the crosswalk over it was made of wooden planks four and one-half feet long. The brick walk was fifty-two inches wide and the planked portion was forty-seven inches wide. At the west ends of the planks there seems to have been some concrete construction designed to hold the planks and end brick, the ends of this construction extending out a little further than the edges of the brick walk. There were no guardrails along the sides of the planked portion of the crosswalk. There was no street light at the intersection, but a year or more prior to the accident, while a camp meeting was being held one block east, there had been a light for three weeks.

The plantiff lived on McGee street at a point south of the intersection. She was employed at a sewing project in the school building and had passed over the crosswalk in question almost every day for some time prior to January 29, 1937. On that day it was rainy. About 5:30 o'clock p. m. plaintiff left her home to call at Mrs. Robbins' home. About 9 o'clock p. m. she started home. She went north from the Robbins' home to the sidewalk, during which time the door to the Robbins' home stood open. It was then closed and she was in the dark. On direct examination, plaintiff stated she—

"Turned east on the sidewalk, walked very carefully and slowly until I came to the bridge (planked portion) and walking very carefully feeling with my foot, I stepped on the edge of the bridge with my right foot where I lost my balance, and throwing my left foot to try to catch my balance landed me in the ditch on my left foot."

On cross-examination she gave substantially the same answer. In other parts of her testimony she said she was feeling with her feet and could tell when she was on the brick walk and "I never happened to hit the edge until I hit the bridge," and that she was feeling with her feet because it was dark and she could not see the walk. There is no specific statement whether at the time of her fall plaintiff was walking on the north or south side of the crosswalk, but Mrs. Robbins, who heard plaintiff call, went out and found her in the ditch south of the crosswalk. The inference must be plaintiff was walking on or near the south side of the crosswalk. We need not detail the evidence as to the extent of plaintiff's injuries nor as to the city's having notice of the condition of the crosswalk, that there were no guardrails along the planked portion and that there was no street light at the intersection.

Appellant's contention is that in the allegations of plaintiff's petition and in her evidence, there is no claim that the crosswalk was defective because the planked portion was narrower than the brick portion abutting on either end, and that failure to construct and maintain guardrails along the plank portion of the crosswalk or to install and maintain a light at the intersection of the street does not convict it of actionable negligence. We here note that in appellant's reply brief, it is stated that it had filed a motion to have the allegation as to the width of the wooden portion of the crossing made more definite and certain. The ruling on this motion is not shown.

Appellee's contention is that it sufficiently pleaded the matter of the narrow portion of the crosswalk as well as the absence of guardrails and street lights, and that all taken together, and being substantiated by the evidence, showed the city had failed in its duty to keep the crosswalk in a reasonably safe condition for pedestrian traffic.

Within the limits of time and space at our disposal, it will be impossible to refer to and discuss the many cases cited in the briefs. It may be stated as a general rule developed in some, if not all of the decisions to which we refer, that the city is under a duty to keep its streets, including sidewalks and crosswalks, in reasonably safe condition for users thereof.

In *Osage City v. Brown*, 27 Kan. 74, the city had constructed a walk in part nine or ten feet wide, and next to that a walk four feet wide, with a rise or offset between the walks, with no covering over the opening in the rise or offset. A pedestrian caught his foot, fell and sustained injuries for which he recovered damages. On appeal this court held it could not say, as a matter of law, the sidewalk was not defective and unsafe; that it was a case for the jury, and that contributory negligence was not presumed from the mere fact the party injured knew the condition of the walk.

In *City of Wellington v. Gregson*, 31 Kan. 99, 1 Pac. 253, it was held that it was the city's duty to keep its streets in reasonably safe condition for public travel, but that it was not to be implied that every street and the whole width thereof must be placed and kept in good condition, and that whether the city was negligent in a given case was ordinarily a question for the jury.

A case often cited is *Gould v. City of Topeka*, 32 Kan. 485, 4 Pac. 822. There the plaintiff claimed to have been injured while driving at night on an embankment leading to a bridge, the alleged defect being that the embankment was high and narrow, and that the city was negligent in not maintaining guardrails and street lights or other lights at night. Plaintiff appealed from an adverse judgment. In its opinion this court reviewed many decisions involving the duty of the city, and held the city had no more right to plan or create an unsafe and dangerous condition of one of its public streets than it had to plan and create a public or private nuisance, and that it must keep its streets in a safe and proper condition at its peril. In discussing the carrying out of a plan of improvement, it was said:

"After a careful consideration of this entire question, we have come to the conclusion that where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a court, upon the facts, can say as a matter of law that it was dangerous and unsafe, the rule contended for by the defendant should not have any application, and the city should be held liable; but where, upon the facts, it would be so doubtful whether the street, as planned and ordered by the governing board of the city, was dangerous or unsafe or not—that different minds might entertain different opinions with respect thereto—the benefit of the doubt might properly be given to the city, or rather to its governing board that planned or ordered that the street should be placed in such a condition, and the rule should be held to apply, and the city should not be held to be liable. . . . (p. 493.)

"We would further think that, in order that the city should be protected from liability on account of the work being executed in accordance with a plan previously adopted by the city, the plan should be shown to have been expressly adopted, and adopted by the city council or other board having the control of the political, the legislative, and the governmental affairs of the city. To say that it has been adopted because the board has given no expression to the contrary, would not do. In order that the city should be protected from liability, it is necessary that its board should have the exact matter under consideration, and, after due deliberation, should expressly order that the thing be done; or if the thing has already been done, then that it should be ratified." (p. 494.)

For error in the instructions the cause was reversed.

In *City of Olathe v. Mizee*, 48 Kan. 435, 29 Pac. 754, the city had made an excavation or ditch along the side of a street. There was a crosswalk over it. While crossing at night, plaintiff met parties going in an opposite direction. She stepped aside and into the ditch. The city appealed from a judgment in plaintiff's favor. In its opinion this court said:

"To leave such a dangerous excavation in a public thoroughfare of the city, and close to a much-used walk, without guards, barriers, lights, or danger signals, is a marked case of carelessness. It would be clearly negligence to leave such a ditch uncovered and unguarded in the daytime; but for the city authorities to permit such a pitfall to remain open and without lights or guards in the nighttime, with full knowledge of its dangerous character, is gross carelessness." (p. 437.)

And it was held:

"Where an excavation is made by the city authorities in the public street of a city, the end of which extends up to a narrow crosswalk at an intersecting street, and it is left overnight uncovered and without guards or danger signals, and a woman, in crossing the street over the crosswalk, meets parties who do not see her or do not turn aside to let her pass, and she, to avoid collision, diverges from the crosswalk, and, without any knowledge of the excavation,

falls therein and is hurt, she may recover from the city for the injury sustained; and the fact that the strangers whom she met did not yield the crosswalk, and that they caused her to step aside and into the excavation, does not preclude such recovery." (Syl. ¶ 1.)

In *Fletcher v. City of Ellsworth*, 53 Kan. 751, 37 Pac. 115, a review was made of some of our decisions respecting sufficiency of proof in an action for damages sustained by reason of a defective street. A demurrer to plaintiff's evidence being sustained, she appealed to this court, which held:

"Where there is a cellarway or opening seventeen feet and five inches in length, and nine feet and six inches in depth, on the side of a building adjoining an alley open for public travel, and such cellarway or opening is all located on and in the alley, and not on a lot or private ground, and has no railing, guard or other protection around it, and a person walking in the alley, upon a dark night, falls therein, without any negligence upon his part, *held*, that the city is liable for the injuries sustained thereby.

"The evidence in this case examined, and *held*, that it cannot be said, as a matter of law, upon the facts disclosed, that the plaintiff was guilty of such contributory negligence as to prevent any recovery. *Held further*, That there was sufficient evidence introduced upon the trial in support of the cause of action alleged by the plaintiff to go to the jury." (Syl. ¶¶ 1, 2.)

Perhaps, from the standpoint of the facts, the most closely analogous case to that at bar is *Klipp v. City of Hoyt*, 99 Kan. 14, 160 Pac. 1000. There a sidewalk was made of cement and was in good condition. The outer edge was fifteen inches above the street level. The sidewalk generally was eight feet wide, but at one point where a building projected outward it was only five feet wide. On the night of the accident it was dark and rainy and the street lights were not lighted. There was no railing along the walk. While plaintiff was walking slowly along, feeling his way, keeping the projecting building in sight as well as he could and trying to see the edge of the sidewalk, he fell into the street below, sustaining injuries. In an action he recovered and the city appealed, contending that as a matter of law it was not guilty of negligence. There, as here, it was contended the walk was properly constructed, and that the city could maintain its street lights or not at its pleasure. Without detailing here the treatment of each contention, it was said:

"The city, however, rested under the positive legal duty to keep its streets and sidewalks in a condition reasonably safe for their intended use. No matter how carefully plans of improvement were considered, and no matter how faithfully the adopted plan was executed, if the result were actual peril to persons using the street with due care the duty to make and keep the

street reasonably safe for travel was not fulfilled and an action would lie in favor of one suffering injury consequent upon the breach of duty.

"Decisions of this court established and illustrating the foregoing principles are very numerous. Among them are the following: *City of Atchison v. Challiss,* 9 Kan. 603; *Methodist Episcopal Church v. City of Wyandotte,* 31 Kan. 721, 3 Pac. 527; *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822; *City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *McGrew v. Kansas City,* 69 Kan. 606, 77 Pac. 698; *The State v. Concordia,* 78 Kan. 250, 96 Pac. 487. . . . In the case of *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822, it was said that the benefit of the doubt might properly be given the city when under the facts it is so doubtful whether or not the street planned by the city is dangerous that different minds might entertain different opinions about the matter. It was not said that benefit of the doubt must be given the city. No governing principle was started. No new standard was set up—diversity of opinion instead of reasonable prudence. The issue was not shifted from whether or not a sidewalk is dangerous to what different people may think about it. The statement amounted to no more than an observation on how the mind might operate when in grave doubt. In this case the question whether or not, under all the circumstances, including the encroachment of the building, the absence of light and the absence of a railing, the sidewalk was reasonably safe if used at night by a person who exercised due care on his part, was properly submitted to the jury." (pp. 16, 17.)

And it was held that the evidence was sufficient to warrant submitting to the jury the question of the city's negligence and the contributory negligence of the plaintiff.

The decision in *Evans v. City of Hutchinson,* 99 Kan. 477, 162 Pac. 342, involved the same general question. It was there said:

"Language used in *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822, is quoted as indicating that before a city can be held responsible for injuries sustained in a sidewalk, the condition of the walk must be such that a court can say as a matter of law that it is dangerous. As recently explained, that case holds merely that where reasonable minds may differ as to the dangerous character of a defect in a street, the doubt *may,* not *must,* be given to the city authorities by the tribunal charged with passing on the matter. (*Klipp v. City of Hoyt,* ante, p. 14, 160 Pac. 1000.)" (p. 479.)

In *Phillips v. City of Wichita,* 128 Kan. 411, 278 Pac. 2, the city had appealed from a ruling striking out allegations of an answer with respect to a plan for construction of street improvements. Included are quotations from the syllabus of *Gould v. City of Topeka,* supra, and the quotation from *Evans v. City of Hutchinson,* supra, heretofore set out, and it is then said:

"Plaintiff would justify the ruling of the trial court in the case at bar by *Klipp v. City of Hoyt,* 99 Kan. 14, 160 Pac. 1000, but nothing is said in that case to warrant a conclusion that a city may not plead and prove, if it can,

that its structures in city streets have been planned and erected with due care and concern for the safety of the traveling public. The Klipp case merely says that the court is not bound as a matter of law to give controlling weight to the judgment of the city officials in planning and constructing a street improvement 'whenever it is so doubtful whether or not the improvement was dangerous that different minds might entertain different opinions regarding the matter' (Syl. ¶ 1), and that the negligence of the city and the contributory negligence of the plaintiff were proper questions for a jury's determination." (p. 415.)

Other statements of the rule with respect to the city's liability may be found in the cases cited in the foregoing decisions. See, also, 29 C. J. 688 (Highways, § 452) ; 43 C. J. 1009 (Mun. Corp. § 1793) ; 13 R. C. L. 309, 398 (Highways, §§ 258, 326) ; 19 R. C. L. 1126 (Mun. Corp. § 405) ; White on Negligence of Municipal Corporations, §§ 560-562, p. 657 et seq.; McQuillin, Municipal Corporations (2d ed.), p. 197 et seq.

It is apparent from the above decisions and authorities that application of the general rule that a city is under absolute duty to keep its streets or sidewalks in reasonably safe condition for vehicular or pedestrian travel is not always easy, owing to diversity of the facts involved in the various cases. In the case before us there was no direct evidence, but appellant infers the crossing in question was toward the outskirts of the city and not much used. We are also confronted with the fact that insofar as the evidence shows, this was the only crossing of the kind as to construction, like situation, etc., in the city. Because the burden would be on the city to show it, in ruling on the demurrer, we have no evidence relating to any plan and the manner in which it was carried out. As to the physical condition of the crosswalk, the evidence clearly showed the wooden portion thereof was almost one-half foot narrower than the brick part; that the wooden part was over a ditch twenty-five inches deep; that it was not protected by guardrails and that there was no street light on the corner. Although appellant says appellee did not rely on the narrowness of the board portion, it did see fit to direct a motion against the petition to learn more about the width. Without attempting to put more weight on one element than another, whether it be the narrow wooden portion of the walk, the absence of guardrails or the absence of light, may it be said as a matter of law the situation was such that the city was not liable to one lawfully using the crosswalk at night if he fell in the ditch and sustained injury? May the question be solved by saying the crossing was safe in daytime, or that the one using it at night was familiar with it? The use

of the crosswalk was not limited to daytime use. Familiarity with the condition might enter into the question of contributory negligence, but the person using the crosswalk might be one who never had passed that way before. We think in view of our decisions that we cannot dissociate the various elements that enter into the negligence of the city—if it was negligent—and say the city was under no legal obligation to maintain a light, therefore its absence was not negligence, and lay that element aside, take up the sole question of guardrails and so dispose of it, and by a process of attrition solve the matter. We think the situation must be viewed as a whole, and that in view of the facts as alleged in the petition and as developed by the evidence, it is such that it may not be said as a matter of law the city was without fault.

The claim that plaintiff was guilty of contributory negligence is based on the fact her evidence showed she was familiar with the physical situation, especially as it existed in the daytime. Her testimony, however, disclosed that knowing there was a crosswalk, she proceeded cautiously, feeling her way with her foot. It did not appear from her testimony that she was aware the boarded part over the ditch was narrower than the brick part leading up to it. We think that under the above decisions whether or not she was guilty of negligence which contributed to her injuries was a fair question for the jury.

Appellant's contention the trial court erred in overruling its motion for judgment *non obstante veredicto* is based in part on matters heretofore treated. It recognizes that having withdrawn its motion for a new trial, it may not question the correctness nor sufficiency of the instructions, but nevertheless predicates some argument on claimed error therein. It will not be considered. The instructions were the law of the case and appellant is not in a position to complain. (See *Stephenson v. W. R. Grimshaw Co.*, 147 Kan. 532, 534, 77 P. 2d 981; Id., 148 Kan. 466, 83 P. 2d 655.) As a part of its argument that it should have judgment in its favor, the city contends that the answer to question 6 is a nullity and does not find it guilty of any act of negligence charged. The question and answer were:

"6. If you find for plaintiff, in what respect was defendant negligent? A. Negligence of the city official's duty."

Consistently with its other contentions and ignoring narrowness of walk as an element, appellant argues the jury should have answered the negligence was either absence of guardrails or of lights.

Assuming the contention otherwise tenable, the eighth question and answer were:

"Do you find that crosswalk was over a ditch over two feet deep, without guardrails, and unlighted? A. Yes."

That answer was certainly within the allegations of the petition and sustained the judgment. (See *Witt v. Roper,* 149 Kan. 184, 86 P. 2d 549.) It may also be noted that the jury, in response to another question, answered the width of the planked portion was forty-seven inches. No question was asked as to the width of the brick portion. An examination of the findings made by answers to special questions and here complained of leads to the conclusion they were not contrary to the general verdict, but were consistent with it, and were not beyond the issues defined in the pleadings. They were not a proper basis for judgment in favor of the appellant, and the trial court did not err in denying its motion for judgment *non obstante veredicto.*

The judgment of the trial court is affirmed.