WILLIAM M. WILSON, APPELLANT, V. CITY OF OMAHA, APPELLEE.

291 N. W. 732

FILED APRIL 26, 1940. No. 30786.

*Anson H. Bigelow,* for appellant.

*Harold C. Linahan, W. W. Wenstrand, Edward Sklenicka* and *Alfred Raneri, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

This is an action by William M. Wilson, plaintiff, for alleged negligence of the city of Omaha, defendant, in damaging by flood waters the house and lots and some personal property owned by him at 3323 Boyd street near the intersection thereof with Thirty-third street.

The petition contains two counts. In the first cause of action damages resulting from a flood June 9, 1936, were alleged to be $1,127.50 and in the second cause of action damages resulting from a flood July 18, 1937, were alleged to be $1,660, or a total of $2,787.50.

The negligence for which plaintiff claims damages seems to be the construction and overloading of the main sewer in an inadequate sewerage system in the sewerage district for a watershed or drainage area of 1,320 acres of land devoted to parks, boulevards, streets, alleys, residences in city blocks and to other purposes. The natural channel of drainage through this area is generally west to east from Fontenelle Park not far from the western boundary of the watershed to or near the intersection of Thirty-third and Boyd streets, the lowest point in the surrounding territory or outlet to the Missouri river; Thirty-third street running north and south and Boyd street east and west. The main sewer is in an old creek bed, the natural course of drainage,

now occupied by Paxton boulevard. Lateral sewers in the area drained empty into the main sewer, some from the southwest and some from the northwest.

The city pleaded in defense to the action that, in locating and constructing the sewers in the drainage area, it adopted and acted on the best available engineering advice, that the sewers were adequate for all normal and ordinary purposes of the drainage district and sewerage system, and that the damages to plaintiff's property were caused by unusual and excessive rains and resulting floods June 9, 1936, and July 18, 1937, and denied any actionable negligence of the city as alleged in the petition.

At the close of plaintiff's evidence, the district court, on motion of defendant, excused the jury and dismissed the case for insufficiency of the evidence to prove municipal negligence causing, or contributing to, the damages pleaded in the petition. Plaintiff appealed.

The controlling question presented by the appeal is the sufficiency of the evidence to make a case for damages on the issue of the city's negligence.

The evidence adduced by plaintiff tends to prove that the intakes at the storm sewers did not collect all the water that fell during the floods; that flood waters flowed over the intakes, on the streets and alleys, and were 150 feet wide at Thirty-third and Boyd streets; that the hydraulic pressure of the water in the main sewer at the intersection there exploded the sewer, which plaintiff alleged to be 15 feet in diameter, and threw water and paving materials into the air; that there were logs, twigs, garbage cans, and other débris all over the streets; that water backed up Boyd street 150 feet into the basement of plaintiff's house where it was four feet deep, damaged the foundation and deposited two inches of mud on the basement floor and on the lawn.

An engineer with a long professional experience in the service of the city was called to the witness-stand by plaintiff, explained the typography of the watershed, described the sewerage system, and said in substance: The sewers in the drainage area were located and constructed in accord-

ance with the best engineering practice at the time. The sewer system was designed for a carrying capacity sufficient to "handle a continuous, uniformly distributed rain of about one inch per hour"—or about the same carrying capacity as the outlet of the lowest spot in the surrounding territory at Thirty-third and Boyd streets. There is also evidence to the effect that it had rained continuously for about an hour before the flood waters reached plaintiff's house. Another witness for plaintiff, born and reared in Omaha, who had resided with his family as a tenant in plaintiff's house for two years, testified that the rains were unusual and said: "With the exception of those (June 9, 1936, and July 18, 1937) I never saw any rains of that nature in that vicinity."

From undisputed evidence the necessary deduction is that rain waters entered the intakes and washed the sewers for about an hour before plaintiff's property was damaged. The damages, therefore, were caused by flood waters, whether pouring from the break in the sewer or flowing on the surface of the ground, on streets and on alleys, carrying logs, twigs, garbage cans and mud.

As already shown, plaintiff's damaged property was situated near the lowest point in the natural channel of drainage before the city created a sewerage district or installed a sewerage system. The evidence shows that the rains which damaged plaintiff's property were unusual and excessive to an extent not necessarily to be anticipated when the sewerage system was planned. Moreover, the evidence fails to show that the floods would not have caused damages to the same extent in absence of municipal sewers. The city charter provides:

"The city council shall have power to lay off the city, or parts thereof, into suitable districts for the purpose of establishing a system of sewerage and drainage; to provide such system and regulate the construction and repairs and use of sewers and drains." Comp. St. 1929, sec. 14-352.

An exercise of this power was not mandatory, but was discretionary with the city council. *Adams v. City of Omaha,*

119 Neb. 753, 230 N. W. 680. In that case it was held: "Cities of the metropolitan class are not liable for damages caused by surface water, because its storm sewers are of insufficient capacity to carry all of such water." In the discussion of this question it was said in the opinion:

"For aught that appears, no more water came to or upon plaintiff's premises than would have naturally reached them if no sewer had been constructed. In fact, the inference is that less water was precipitated upon his premises than would have been, had no sewer been constructed. The law authorizes, but does not require, cities of the metropolitan class to construct storm sewers. If no storm sewer had been constructed, plaintiff's damage would not have been less and might have been greater. Plaintiff's plight is no worse because of the insufficiency of the sewer, and it is to be inferred that it is somewhat better.

"A somewhat similar question was presented in *City of Atchison v. Challiss,* 9 Kan. 603, 611, where in the opinion it was said: 'Now, if a city is not bound to construct a drain of any kind, by what system of reasoning can it be made to appear that if it shall construct a drain it must construct one that shall be sufficient in all cases, and for every emergency? Any drain is better than no drain. Any drain instead of being an injury to a party is, so far as it operates, a positive benefit. If it carries off half the water that falls upon his premises, instead of the whole, how can that be said to be an injury? Is it not an actual benefit to the extent that it operates? And if a benefit, upon what principle can the city be made liable?' If failure to construct storm sewers to carry off any of the surface waters was not negligence, certainly the construction of the sewer that carries away a part of the water would not be actionable." *Adams v. City of Omaha,* 119 Neb. 753, 230 N. W. 680.

The reasoning in the opinions of the Nebraska and Kansas courts in the cases cited was adopted in *Deschner v. City of Ipswich,* 59 S. Dak. 456, 240 N. W. 487.

Upon consideration of all the competent evidence in the record and offers of proof rejected, the conclusion is that

plaintiff did not make a case for damages on the issue of actionable negligence of the city. Having reached this conclusion, the rejection of photographs and other evidence tending to show the effect of the flood waters on the premises of plaintiff is immaterial.

AFFIRMED.