No. 19,014.

RALPH E. MARTIN, *Appellee;* v. THE CITY OF COLUMBUS,
*Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Allegations and Proof—Variance.* Where it is
contended that the collision of the left wheels of a vehicle
with a defective crossing upset the wagon and caused an
injury, and the jury find against the contention, the fact that
the right wheels did strike the crossing is immaterial if the
crossing was not defective at that point.

2. TRIAL—*Answer "Don't Know" to Special Question Construed.*
The decision in *Kalina v. Railroad Co.*, 69 Kan. 172, 76 Pac.
438, declaring the effect of the answer "Don't know" re-
turned by a jury to a special question is followed.

3. NEGLIGENCE—*Defective Street Crossing—Opinion Evidence
Incompetent.* In the trial of an issue arising upon a charge
of negligence of a city in maintaining a defective sidewalk
crossing in an improved street, a description of the street,
the crossing, and other objects or things affecting travel at
that point, together with the particular use made of the
street and crossing at the time, were matters within the com-
prehension of a jury, affording sufficient means of information
concerning the reasonable safety of the crossing. The opinion
of a witness who has constructed or repaired such crossings
elsewhere that it was not in proper condition, or what repairs
were required to make it safe, should not be admitted.

4. TRIAL—*Instructions Relating to Negligence.* Instructions
given and requests for others are examined and commented
upon.

Appeal from Cherokee district court; EDWARD E.
SAPP, judge. Opinion filed October 10, 1914. Reversed.

*Al. F. Williams, A. H. Skidmore,* and *S. L. Walker,*
all of Columbus, for the appellant,

*Charles Stephens, E. V. McNeill,* and *C. A. McNeill,*
all of Columbus, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a judgment awarding damages for personal injuries suffered from defects in city streets.

The plaintiff, chief of the city fire department, with four firemen in a fire wagon drove west on Maple street. The team while running was turned abruptly south at the intersection of Florida avenue. The wagon overturned at a stone sidewalk crossing over Florida avenue on the south side of Maple street just after the turn was completed. The plaintiff was thrown to the ground and injured. The wagon was being driven to a fire, and the plaintiff and his companions were in the line of duty.

After stating the location of the streets, the petition alleges the existence of the stone crossing over Florida avenue and alleges that it was "in a dangerous and unsafe condition in that, for a distance of about ten feet east and west and at the place where the traveling public drove over same, it stood about eight inches higher than the surface of the street north of same and adjacent thereto." This is followed by a description of a wooden culvert about thirty feet long, crossing the traveled way of Forida avenue, parallel with the crossing and about fifteen feet north of it. It is next alleged that "just south of and near the west part of its said culvert" the city had negligently allowed a part of the avenue between the culvert and crossing "to remain sunken and low, therefore dangerous and unsafe." In describing the disaster the petition states: "While said team was being turned . . . from said Maple avenue and going in southwesterly direction so as to swing south on said Florida avenue which was the proper route to said fire, the right wheels of said tall fire wagon dropped into said dangerous and unsafe low depression over and just south of said west part of said culvert, and almost instantly the left wheels of said fire wagon struck said

dangerous and unsafe high prominent part of said sandstone sidewalk, which dropping down of said right wheels into said dangerous and unsafe depression over and just south of said west portion of said culvert and said throwing up and raising of said left wheels, which struck said high portion of said sandstone sidewalk or crossing near the west end of said high place in said walk, overbalanced said wagon so that while still going down said Florida avenue it ran for several yards . . . on its two right wheels, and finally turned over on its right side at a point close to the west side of Florida avenue and about five or ten feet south of said sandstone sidewalk crossing."

Many eyewitnesses, including the men in the wagon, testified to the occurrence as they observed it. From their testimony it appears that the team was running at the usual high speed incident to such service; that the turn was abruptly made; that the left or east wheels of the wagon by its tipping to the west and right left the ground; that the right wheels cut into the ground, making a considerable indentation, called by some of the witnesses, a furrow; that these wheels were west of the usual beaten track which covered about eight feet of the width of the traveled part of the street; that where the right wheels struck the crossing it was flush with the adjacent surface of the way, but at the point where the left wheels passed over the crossing the adjacent surface immediately north of it was depressed or sunken for about ten feet along the walk, but the depth of this depression is a matter concerning which the evidence is indefinite. There was a jar or bounce of the wagon at the crossing, the right-hand or "off" horse fell to his knees, the whiffletree on that side broke, the wagon veered to the right or southwest, and turned over a few feet beyond the crossing. The streets were unpaved, the surface being softer west of the beaten path than on the beaten path. The depression along the

6—93 KAN.

north side of the crosswalk for the ten feet referred to was in the usual beaten track, but it is not claimed that it extended west to the point where the right wheels were. Several witnesses testified that the depression now referred to was only from one and one-half to two and one-half inches below the general level, and that the edge of the crossing was worn down, making the obstruction slight. There was testimony, however, that the depression was greater, and in the light of the general verdict this testimony must be taken as true. It is difficult to precisely state the condition of the low place described in the petition, just south of the culvert, west of the beaten track, where the right wheels were running. As we have seen, it is alleged that it was "sunken and low, therefore dangerous." One witness called it "a sway in there" sloping down from the crossing five or six feet to the north. Another witness, a brother of the plaintiff, riding in the wagon, said, "Wagon was riding on two wheels when we went over culvert. Did not notice any depression but noticed an angling or incline up the sidewalk." He also said that the width of the wagon was out of the main traveled road. Other witnesses for the plaintiff testified on this subject, one saying "North side of crosswalk extended about three inches above the dirt, and the ground just north of that was still lower." Another said that the crossing was two and one-half inches higher than the surface which sloped back to the culvert. "There was a hole just north where the wagon wheels had dropped down. Crosswalk projected about three inches above dirt and a little north of that where the wheels dropped it was still lower." Another testified that the ground was sloping down from the crossing, which was two to four inches above the surface, to the culvert. "Q. There wasn't any big hole there. A. Not that I saw. Q. Well, you know there wasn't. . . . A. Well, we looked that over." Another said, "The walk stuck up some three or four inches above the dirt and just north

of that where the wheels struck it was an inch and a half or two inches lower."

Neither in the petition, nor in the testimony, aside from that of one witness, is the lower surface on the west side of Florida avenue south and near the west end of the culvert referred to as a hole, and while so characterizing it his testimony showed only a concave surface or depression in the surface which sloped generally from the crossing to the culvert, and this it is believed is all that the plaintiff claims. It is said in his brief:

"All of the evidence of plaintiff's witnesses and most of the witnesses for defendant testified that there was a slope from the cross-walk down to the culvert and that the wear from travel, rain and wind had cut it out that full distance, and if the general surface all along north of the cross-walk sloped north toward the culvert and this same slope was in the regular traveled driveway it could not be other than low where the west wheels of the wagon passed south of the culvert. Guy Mitchell said, 'The track north of this walk there was a sway in there from this little culvert.'"

While the existence of the depression or concave surface is alleged as a ground of negligence, the case was tried and instructions were given and the argument is presented here upon the theory that its existence accentuated or made dangerous the protruding crossing in the beaten track which the left wheels passed over and which it is contended was the proximate cause of the injury, that is, that the right wheels falling to a lower level in this depression, the left wheels immediately striking the crossing gave the vehicle a wrench or turn by which it was overturned.

In instructing the jury the court said:

"Twelfth. It was the duty of the city to keep its streets, alleys and sidewalks in a reasonably safe condition for public travel and firemen in the discharge of their duties have a right to use the same for making fast and hasty drives and runs to fires in the city when alarms are given, and the fact that they do make

such fast and hasty drives and runs does not impute to them negligence, and if you find the plaintiff in this case was acting in the usual and ordinary way, and using the ordinary methods in going to a fire and was injured, and the proximate cause of the injury was the defective and unsafe condition of the crosswalk in question, he would be entitled to recover."

A special question asked by the plaintiff and the answer thereto were:

"Do you find from the evidence that plaintiff's injury was caused by the neglect of defendant in not having said crosswalk in a reasonably safe condition for the use of the hose-wagon in hastily going to the fire, while he was in the exercise of ordinary care. Answer. Yes."

No finding was asked concerning the depression just south of and near the west end of the culvert, and no special instruction was asked pertinent to a consideration of that matter as a proximate cause of injury.

The jury found against the defendant's contention that the proximate cause of the injury was the too abrupt turn, and also found that Florida avenue was not in a reasonably safe condition for travel in the usual mode. The jury also answered questions as follows:

"Q. 3. Did the fire wagon tilt or tip onto the right hand wheels, the left hand wheels leaving the ground, when the turn from Maple street into Florida Avenue was made and before the wagon reached the sidewalk crossing in Florida Avenue? A. Yes.

"Q. 12. Were the wheels on the east or left hand side of the wagon off the ground and in the air at the time the wagon passed over the sidewalk crossing? Answer. Don't know."

Upon the issues presented by the pleadings and stated in the instructions, the defendant contends that in the absence of a finding that the injury was caused in the manner alleged, viz., by the left wheels striking the defective crossing, the verdict can not be sustained; that the general verdict does not imply such a finding

because the jury stated that they did not know whether these wheels struck the crossing or not. In other words, it is argued that as the plaintiff failed to satisfy the jury that the defect relied upon as the proximate cause of the injury contributed to it at all he can not recover. The plaintiff, responding to this argument, says that at least one of the left wheels must have struck the walk because of the jar or bounce, testified to by witnesses, and it is suggested that a finding that the left wheels did not strike the walk carries no implication that one of them did not. The question was doubtless framed to meet the issue as made by the pleadings, viz., that the left wheels struck the obstruction, and to ascribe the negative finding of the jury to the narrow interpretation suggested would be a refinement upon the answer hardly consistent with the presumed good faith and understanding of the jury. Had they found, as argued, that one wheel struck the crossing, it is fair to presume they would have said so. In the conflict of testimony upon that point several witnesses who saw the occurrence having sworn that the left wheels were in the air all of the short time after the turn, while others testified that the wagon settled down before the crossing was reached, the jury were not convinced of the fact alleged and so returned a negative finding. The plaintiff made no request for further deliberation or finding. It is true that where two grounds of negligence are alleged and but one is proved, it will support a verdict if it be the proximate cause, but the proximate cause here was found to be the obstruction caused by the crosswalk and there was no allegation that it was defective anywhere except in the place where the wheels, according to the negative finding, did not strike it at all. The plaintiff says in argument, "Where the west wheels passed over the walk, the dirt was flush with the rock." If so, the

crossing was not defective at that point. It is also said in the argument:

"But even if, as defendant claims, it was the protrusion of the rock where the right wheel struck, that caused the right horse to break its single tree and the consequent swinging of the left horse to the west, which pulled it over, we do not see that even these facts could be presented by defendant in its statement, as being in its favor, by showing that the cross-walk was in a safe condition, if either of the east wheels hit the cross-walk. And if the left horse did swing to the west when the right horse broke its single tree, the tendency would be to right the moving wagon, another circumstance which shows that the left wheel hitting the high rock is what caused the 'bounce.'   .   .   .
J. E. Chambers testified that 'When the hind wheels struck the cross walk going south, it made a big bounce and went over,' etc.   In the light of reason this proves that the left hind wheel hit the high place in the walk. It could not have been the right hind wheel that caused the 'big bounce,' as the dirt there was flush with the rock and if it had not been flush the front west wheel would have given a 'big bounce.'   It must have been the left hind wheel dropped low enough to catch the 8 or 10 in. protrusion and caused the trouble.   .   .   .
Where the west wheels passed over the walk, the dirt was flush with the rock, and it being dry and dusty at that time, the jar could not have been at the west wheels."

Thus it will be seen that the theory upon which the petition was drawn and the cause submitted is still adhered to—that the collision of the left wheel or wheels with the crossing upset the wagon and was the proximate cause of the resulting injury. If it be conceded that the collision of the right or west wheels caused the disaster, the case falls, for it is not contended that the crossing was defective at that place. The plaintiff's pleadings and argument are entirely consistent, but the jury were not satisfied of the existence of the material fact upon which they are based.

Any negligence of the city in allowing the alleged depression, just south of and near the west end of the

culvert, to remain, over which the right wheels passed, is not material unless a collision with the crossing by the left wheels occurred. Such negligence, if any, was unrelated to the catastrophe since it is contended that it was the collision of the left wheels that caused it. In an analogous situation it was said:

"If it be conceded that he was negligent in the manner in which the platform and steps were constructed, his negligence was wholly unrelated in its operation to the direct, proximate cause of the injury, but was the prior and remote cause, and did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible." (*Colwell v. Parker*, 81 Kan. 295, 299, 105 Pac. 524.)

A recovery in such cases must be for the specific negligence alleged. (*S. & S. Co. v. Weeks,* 66 Kan. 800, 72 Pac. 274; *Railroad Co. v. Elrod,* 78 Kan. 868, 93 Pac. 215.)

The facts proven and found by the jury must correspond with the averments of the petition. (*Planingmill Co. v. Baker,* 74 Kan. 120, 85 Pac. 1016.)

The burden was upon the plaintiff to prove the negligence and resulting collision as alleged. The finding, "don't know," reveals a failure to make such proof.

"The answer of a special question made as this was is, as against the party on whom rests the burden of proof, in the negative, or that such party has failed in his proof." (*Kalina v. Railroad Co.,* 69 Kan. 172, 174, 76 Pac. 438.)

While liberal rules of pleading prevail in this court, and in many cases the allegation of injury from a collision by particular wheels of a vehicle might be sustained by proof of collision by other wheels, the fact that no defect in the crossing was shown at the place where the other wheels struck it—the ground there, as conceded, being "flush with the crossing," precludes a recovery.

A person who had worked in another city as an engineer in building and repairing streets, sidewalks and crossings, and had observed the condition of crosswalks

in other near-by cities, was allowed to testify as an expert how they should be repaired. The situation here was the crossing of unpaved streets, on substantially level ground, with an ordinary crosswalk. A description of the street, the crossing, and other objects or things affecting travel at that point, together with the particular use made of the street and crossing at the time, were matters within the ordinary comprehension of a jury, affording sufficient means of information concerning the reasonable safety of the crossing. The opinions of witnesses who have constructed or repaired such crossings elsewhere, concerning the necessity and manner of making repairs, should not be admitted. (*City of Topeka v. Sherwood,* 39 Kan. 690, 18 Pac. 933; *Murray v. Woodson County,* 58 Kan. 1, 48 Pac. 554.) This, indeed, is so apparent that the error in admitting the testimony should probably be regarded as harmless. However, our views are now given for information and guidance upon another trial.

The defendant criticises the 12th instruction, copied above, and complains that the city is charged with a higher degree of care than the law requires. The language complained of, however, refers to the right of the plaintiff as a fireman in running to a fire, rather than to the duty of the city in caring for its streets, for in the fourth instruction they were told:

"That it was the duty of the defendant . . . . to keep and maintain its streets in a reasonably safe condition for public travel, and that it was its duty to use as great a degree of care toward the plaintiff, as fireman, traveling over the streets in the discharge of his duties, as to any other traveler, but the defendant owed the plaintiff no greater degree of care than it did to any other traveler who had occasion to use such streets, and a failure on the part of the city to so keep the streets in such condition, which results in the injury of another, when such other is in the use of ordinary care is actional negligence."

Again, in the seventh instruction, the jury were told in substance that the city was only required to keep in

Martin v. City of Columbus.

repair the traveled portion of the street, and if that was wide enough and reasonably safe for passage, the duty was sufficiently performed. Reading the instructions as a whole, we find no reason to believe that the jury could have been misled, although it is possible that a slight addition to the 12th instruction, showing its limitation to the duty and rights of the plaintiff merely, and its relation to the seventh, defining the duties of the city, might have made the matter clearer.

The defendant requested several additional instructions, among them the following:

"You are instructed that the defendant was not required to prepare and maintain its streets for unusual and extraordinary uses, and that it can not be held liable for injuries occasioned by travel which is not in the usual modes."

This was but the negative of the proposition fairly included in the fourth instruction given, and the last clause might be misleading without some qualification. The instructions clearly stated the issues and the rules of law, and with the possible changes suggested, in the light of the argument made in this court, of which the district court did not have the benefit, embrace an admirable presentation of the case to the jury.

For the failure of proof to sustain the material allegation of negligence above considered, the judgment is reversed and a new trial is directed.

JOHNSTON, C. J. (dissenting) : The reversal is based mainly on the theory that the left wheels of the fire wagon did not strike the defective crosswalk. This inference is drawn from special finding number 12, which was:

"Question 12. Were the wheels on the east or left hand side of the wagon off the ground and in the air at the time the wagon passed over the sidewalk crossing? Answer. Don't know."

There is testimony that the left wheels lifted up as the turn was made into Florida avenue and that they

afterwards settled back before reaching the crossing, and abundant testimony that the left wheels struck the crossing. The fact that one or both of the left wheels were in the air when the wagon passed over the cross-walk does not prove that the wheels, which had tipped up at the turn and then settled back, did not subsequently strike the crosswalk. When the left front wheel struck the four-inch face of the stone crosswalk and the right wheels were in the depression shown to exist it would be almost certain to tip the wagon over and throw one or both of the left wheels into the air. One of the left wheels might have struck the crossing and the other have been in the air as the wagon passed over the crosswalk, so that the jury would be unable to definitely say whether the wheels were in the air at that moment. The essential feature in this respect is not whether the wheels were in the air when the wagon went over the crosswalk, but whether the left wheels actually struck the crosswalk and thus tipped the wagon over. The general verdict is in favor of the appellee, and every inference which the evidence tends to support and is not inconsistent with the special findings must be drawn in his favor. As against the verdict we are not permitted to strain a special finding or to give it a narrow interpretation. In the petition it is stated that the defects in the street were a low depression between the culvert and the stone crosswalk, which was a distance of fifteen feet, and the stone crosswalk which negligently projected above the level of the ground. That there was a depression was sufficiently proven by several of the witnesses, and that the stone walk projected dangerously above the surrounding ground was also well proven. Some of the witnesses testified that it was from three to four inches above the level of the ground. The jury specifically found that the wagon would not have been turned over if the crosswalk had been in a reasonably safe condition, and, further, that the defective condition of the crosswalk was the proxi-

Martin v. City of Columbus.

mate cause of the injury. It was also specifically found that the wagon did not go beyond the right place to make the turn into the side street, and that it was not tipped over because of the speed at which it was run nor because of the abrupt turn that was made. The main reason urged for reversal is that it was not established that the left wheels of the wagon struck the stone crosswalk, and this is based mainly on an indefinite special finding which does not, in terms, refer to the question whether or not the wheels struck the crosswalk and the answer to which was, "Don't know." A closer examination of the evidence shows that six witnesses testified that the left wheels which rose from the ground when the turn was made settled back again, and that one or both of them struck the defective crosswalk. This testimony, which is supported by the general verdict, is not, in my opinion, contradicted by the special findings. Whether the wheels arose in the air after striking the crosswalk the jury were unable to say, but whether they were in the air going over the walk is not a determinative fact, and a verdict so well sustained by the evidence should not, in my view, be set aside because the jury were unable to say whether the wheels touched the ground after striking the crosswalk.

I am authorized to say that Mr. Justice SMITH and Mr. Justice WEST concur in this dissent.