No. 28,764.

MRS. BESSIE PHILLIPS, *Appellee*, v. THE CITY OF WICHITA, *Appellant.*

(278 Pac. 2.)

Opinion filed June 8, 1929.

*A. V. Roberts, Vincent F. Hiebsch* and *Charles A. Springer,* all of Wichita, for the appellant.

*J. W. Smyth,* of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff, Mrs. Bessie Phillips, sued the city of Wichita for damages because of injuries sustained by her when riding in an automobile with her husband on Douglas avenue, the principal street of Wichita. As the automobile with its occupants was driven eastward, one misty evening after nightfall, it collided with one of the abutments of the railway viaduct which spans Douglas avenue as an overhead crossing. The street at that point is somewhat in excess of 114 feet in width, and pedestrian, vehicular and street-car traffic are kept separate under the viaduct and its approaches by cement abutments or what might be termed "wing walls" extending parallel with the street and which project for some distance beyond the width of the viaduct itself. The viaduct was

constructed about eighteen years ago, under a city ordinance which prescribed:

"Section Two. A subway shall be constructed under said roadbed and tracks at Douglas avenue, which shall be 114 feet in width between the faces of the abutments supporting said tracks. This space shall be divided into two fifteen (15) foot sidewalk spans, two twenty-nine (29) foot roadway spans and one twenty-six (26) foot span over the street railway company's tracks, with one line of posts at each curb and one line of posts each side of the center line of the street, at a distance of thirteen (13) feet therefrom; the above measurements being from center to center of posts. That portion of said street occupied by the tracks of the street railway company shall be depressed about three (3) feet, or not lower than elevation 109.55 city datum, and the remainder of the roadway shall be depressed about one foot six inches (1' 6") or not lower than elevation 111.05, city datum. The sidewalks shall be carried through said subway at about the same elevation as at present. There shall be a clear head room of thirteen (13) feet six (6) inches above the street railway tracks."

The plaintiff alleged that the city negligently failed in its duty to keep the street in a reasonably safe condition for public travel in various particulars, to wit, in its maintenance of the cement abutment or "wing wall" with which the automobile collided; that the wall was unguarded and unlighted; that the wall was of low height and of a dirty gray or neutral color and without any signal light or warning device, and thus constituted a dangerous obstruction and nuisance on the public street, all of which facts were well known to the city and its agents and servants and unknown to plaintiff; and that her husband was driving the automobile—

"At a speed of approximately twenty miles an hour . . . At the time in question the weather was rainy and misty, and the pavements were wet and black, and the automobile in which said plaintiff was riding had both headlights and its tail light burning; that when the said automobile had proceeded to within a distance of approximately fifty feet from the elevated railroad tracks aforesaid, it came suddenly and without any warning whatsoever upon the end of the concrete wall so erected and maintained by the city of Wichita, as hereinbefore set forth, and collided with the end of said wall with great force and violence, and this plaintiff was hurled with great force and violence against the dash, windshield and front portions of the body of the said automobile in which she was riding, thereby inflicting great bodily injuries upon this plaintiff."

The answer to plaintiff's petition filed by the city of Wichita contained a general denial, alleged contributory negligence on the part of plaintiff in various particulars, set up a copy of section 2 of the city ordinance quoted above, and alleged—

"Further answering, this defendant alleges and states that if the plaintiff, in the operation of the automobile in question, collided with the concrete walls or abutments under the elevated tracks on Douglas avenue, as alleged in her petition, her injuries were not due to any fault or negligence on the part of this defendant for the reason that said concrete walls or abutments were constructed pursuant to and in accordance with a plan previously adopted by the governing body of the city of Wichita, which plan was expressly adopted by such governing body having control of the political, legislative and governmental affairs of the city, after due deliberation. That said plan was embodied in ordinance No. 4066 of the city of Wichita, being an 'Ordinance providing a scheme of railway track elevation in the city of Wichita, Kansas, and affording means and facilities for the construction of a union railway station and making regulations and requirements incident thereto.' . . .

"That said walls or abutments are in the same condition now as they were at the time of construction."

On motion of plaintiff the trial court struck out of defendant's answer the paragraph just quoted and also struck out section 2 of the ordinance pleaded in connection therewith.

Treating this ruling as the equivalent of sustaining a demurrer to so much of defendant's answer, which was quite a proper view of it under the issues made by the pleadings, the defendant brings the ruling here for review.

Defendant contends that the matter struck out of its answer was a proper and material part of its defense to plaintiff's action. It may not be a complete defense, but certainly the city had a right to plead and prove, if it could, that the concrete wing walls or abutments which separated the eastbound and westbound traffic on Douglas avenue and separated the pedestrian, vehicular and street-car traffic under the viaduct were proper engineering traffic devices. At all events the striking out of so much of defendant's answer was equivalent to a ruling of the court as a matter of law that the stricken allegations constituted no defense whatever to plaintiff's action. We cannot assent to that view. Assuming, as we must, the truth of the stricken matter, the city would not be liable as for the wrongful maintenance of an obstruction in the public street unless the plan specified in the ordinance was manifestly unsafe and likely to cause injury and damage to reasonably prudent persons riding in automobiles driven at what would be a reasonable speed under the circumstances. The passageway under the viaduct for eastbound vehicular traffic between the cement wing walls was twenty-nine feet. It cannot be said as a matter of law that such a width of clear space

between the cement obstructions was insufficient for the safe passage of persons riding in an automobile prudently driven. Such matters were within the ordinary comprehension of a jury and determinable by them upon view and other competent evidence. (*Martin v. City of Columbus,* 93 Kan. 79, 88, 143 Pac. 421.)

In the early and well-reasoned case of *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822, where plaintiff sought to subject the city to damages because his carriage was overturned by an embankment in the street alleged to have been negligently maintained by the city, it was held:

"Where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a court, upon the facts, can say, as a matter of law, that it was dangerous and unsafe, the city should generally be held liable for any resulting injuries to individuals; but where, upon the facts, it would be so doubtful whether the street as planned or ordered by the governing board of the city was dangerous or unsafe, or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt might properly be given to the city or to the governing board that planned it, and the city held not liable.

"Where it is claimed that the city should be protected for the reason that the condition of the street was so brought about in accordance with a plan previously adopted or subsequently ratified by the city or its governing board in the exercise of a judicial, quasi-judicial, legislative or discretionary power, it must be shown that the exact matter was under consideration by the governing board, and that after due deliberation such plan was expressly adopted, or expressly ratified.

"If a city or its governing board should order that a high and narrow embankment with precipitous sides should be made in a public street for the purpose that the travel should pass over the embankment, and should say nothing concerning railings, guards, or other barriers, and nothing concerning street lamps or other lights, to prevent persons in the nighttime from falling or driving off the embankment and thereby being injured, it should not be held that the city had planned or ordered that no such railings, guards, barriers, lamps or lights should be used. There should be no presumption that the city authorities had ordered or planned that a public street should be dangerous." (Syl. ¶¶ 4, 5, 6.)

Commenting on this case thirty years later in *Evans v. City of Hutchinson,* 99 Kan. 477, 479, 162 Pac. 342, Mr. Justice Mason said:

"Language used in *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822, is quoted as indicating that before a city can be held responsible for injuries sustained in a sidewalk, the condition of the walk must be such that a court can say as a matter of law that it is dangerous. As recently explained, that case holds merely that where reasonable minds may differ as to the dangerous character of a defect in a street, the doubt *may,* not *must,* be given to the city

authorities by the tribunal charged with passing on the matter. (*Klipp v. City of Hoyt,* ante, p. 14, 160 Pac. 1000.)"

Plaintiff would justify the ruling of the trial court in the case at bar by *Klipp v. City of Hoyt,* 99 Kan. 14, 160 Pac. 1000, but nothing is said in that case to warrant a conclusion that a city may not plead and prove, if it can, that its structures in city streets have been planned and erected with due care and concern for the safety of the traveling public. The Klipp case merely says that the court is not bound as a matter of law to give controlling weight to the judgment of the city officials in planning and constructing a street improvement "whenever it is so doubtful whether or not the improvement was dangerous that different minds might entertain different opinions regarding the matter" (syl. ¶ 1), and that the negligence of the city and the contributory negligence of the plaintiff were proper questions for a jury's determination. In so far as the case just cited bears on the ruling under review it tends to support the appellant's contention.

Plaintiff offers another suggestion to sustain the judgment which is to this effect: She says that the projection of the cement wall for a considerable distance beyond the base width of the overhead viaduct was not erected in accordance with the city ordinance. Perhaps so. That may or may not weaken the city's defense, but it affords no ground for striking out the matter pleaded in defendant's answer, which is our only concern in this appeal.

The judgment of the district court is reversed and the cause remanded with instructions to reinstate the matter stricken from defendant's answer and for further proceedings consistent therewith.