No. 29,625.

Bessie Phillips, *Appellee,* v. The City of Wichita, *Appellant.*

(294 Pac. 911.)

Opinion filed January 10, 1931.

*A. V. Roberts, Vincent F. Hiebsch* and *Roger P. Almond,* all of Wichita, for the appellant.

*J. W. Smith* and *George McGill,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages for personal injury sustained by plaintiff when the automobile in which she was riding, and which was driven by her husband, struck a cement wall extending into a city street from a pier of a railroad viaduct over the street. The verdict and judgment were for plaintiff, and the city appeals.

The case was here once before on a question of pleading (*Phillips v. City of Wichita,* 128 Kan. 411, 278 Pac. 2), and the facts relating to the accident are sufficiently stated in the former opinion. The city identified the projecting wall with the viaduct scheme, and produced evidence to show the whole scheme was a proper one from an engineering standpoint. The fact was, however, as indicated in the former opinion and as now stated in the city's brief, the wall served as a banister and retaining wall and protected the difference between the roadway and street railway elevations. At the trial the only substantial issue was whether there should have been a proper light on the narrow point of the wall, so that automobile drivers, driving at night in mist and rain, on the south side of the street near the

street railway track, could see the end of the wall, turn to the right and avoid it.

Absence of a proper light was urged as a ground of negligence on the part of the city. It would serve no useful purpose to detail the evidence relating to that subject, which took a wide range. It is sufficient to say the unlighted point of the wall was a serious menace to eastbound automobile traffic, and the verdict finding the city guilty of negligence was abundantly sustained by evidence.

As indicated, plaintiff was not driving the automobile. Her husband was driving. His negligence would not alone defeat her action if the city was negligent, and the special findings of the jury and the general verdict acquitting her of negligence were abundantly sustained by evidence.

The city complains the court committed trial errors in the admission and rejection of testimony.

In the course of the examination of plaintiff's husband the following occurred:

"Q. Was there any light upon or immediately adjacent to this wall you struck? A. No, sir; there was none.

"Q. Had there been a light of the sort on the wall in question on the night of the 27th, could you have seen that light? A. Surely I could; if there had been a light there, I would have never hit it."

The objection to the last question was that it called for a conclusion. The question took a short cut through an aggregation of individual facts; but because all the conditions of visibility, including ability and opportunity of plaintiff to see, were fully described, and the manner in which the automobile was driven was fully described, the court cannot say that the verdict was determined by the answer to the question.

Plaintiff testified very fully concerning the manner in which the automobile was operated before the accident. The following occurred:

"Q. Was his handling of the car in question at that time such as to suggest to your attention at all that you should attempt to interfere with the driving, or protest about the driving? A. None whatever."

General elements of careful driving under the conditions existing at the time of the accident were disclosed by the testimony. The purpose of the question was to bring out any additional fact, if any, known to plaintiff, bearing on the subject, and the court is of the opinion the question and answer were not objectionable.

Plaintiff was very seriously injured, and her injuries were quite fully described. She was confined in St. Francis hospital in Wichita, and received hospital care there for nearly three weeks. She was then removed to St. Anthony hospital at Dodge City, where she resided, and received hospital care there for five weeks. While at Wichita she was treated by Doctor Evans and Doctor Gsel, and some of the treatment was described. At Dodge City she was treated by Doctor Thompson. She testified the St. Francis hospital bill was $104, and she paid Doctor Evans $125, and Doctor Gsel $10. She also testified she paid the St. Anthony hospital bill of $175, and paid Doctor Thompson $126. The city contends there was no evidence the sums paid for hospital and medical treatment were reasonable. There was no evidence of that kind except such as inheres in the facts which have been stated. The described injuries manifestly required competent hospital service and skillful surgical and medical treatment for a long time. The standard character of the hospitals, and the professional standing of the physicians, were not questioned. The testimony of plaintiff, as abstracted, shows she was an educated woman of keen intelligence and understanding. She paid the bills, and there is nothing in the evidence to suggest to anyone that the bills were unreasonable. Looked at from a common-sense standpoint we have in the record the tacit judgment of the hospital authorities, the physicians and the plaintiff that the charges were not extravagant charges for the services rendered, and that ought to be enough to take such a case to the jury. However that may be, no objection was made at the trial that the bills should not be allowed as part of plaintiff's damages because of lack of evidence that they were reasonable. No doubt plaintiff could easily have supplied the formal proof if the subject had been called to the attention of the district court. The result is, the objection made in this court comes too late, and prejudicial error is not made to appear.

Some offered testimony was rejected and was presented to the court by affidavit at the hearing on the motion for new trial. The testimony was that of a competent engineer, and the material part of the affidavit follows:

"That it is the usual customary practice of engineers, and by far the better practice, not to put lights upon a structure such as the structure with which the automobile in which the plaintiff was riding collided, for the reason that such lights tend to dazzle or blind the driver of a vehicle approaching such

structure, and that the practice almost universally adopted by engineers is to place the lights on the side of the street, so that they have more of a flood-light effect, lighting up the structure so that the driver, if he is watching before him, can see it much better than he can with the lights directly upon the structure itself."

The manner in which the structure was lighted was described in detail, and the jury properly found the lighting was insufficient to reveal the dull-gray pointed end of the wall to a driver approaching it on a dark and rainy night. Nobody contended the structure ought to be lighted in a manner that would dazzle and blind automobile drivers. The kind of light which was needed was a blinking light at the end of the wall, such as the city installed after the accident, or a nondazzling red light such as marked the ends of the street-car loading platforms. Prejudicial error was not committed in rejecting the testimony.

The instructions given the jury were correct, and were adequate.

The judgment of the district court is affirmed.