No. 32,536

LULA HILL, *Appellee*, v. THE KANSAS STATE HIGHWAY COMMISSION, *Appellant*.

(53 P. 2d 882)

Opinion filed January 25, 1936.

*Wint Smith,* attorney for the state highway commission, *Edward F. Arn,* assistant, and *Clayton Brenner,* of Olathe, for the appellant.

*J. M. Challis,* of Atchison, *Howard E. Payne,* of Olathe, *Leslie A. Welch* and *Clyde J. Linde,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for injuries sustained on account of the death of the husband of plaintiff alleged to have been caused by a defective state highway. Judgment was for plaintiff. Defendant highway commission appeals.

The scene of the tragedy was a bridge on highway 50 just north of Merriam in Johnson county. William H. Hill, the husband of

plaintiff, was driving north on this highway at 7:30 p. m. It was dark and cars were being driven with the lights turned on. The car driven by the husband of plaintiff collided with the steel trestlework of the bridge. It was a Franklin coupé. It ran up the inclined part of the trestlework onto the top part and then fell over to the left into the road. Hill, the driver, was caught underneath the car. He died soon after it was lifted from him. This action was brought by his widow under the provisions of R. S. 1933 Supp. 68-419, commonly known as the defective-highway statute.

The allegations of the petition as to the defective condition of the highway were as follows:

"That said bridge was defective and there were defects in said highway in the following respects, to wit: That although the paved portion of the highway south and north of said bridge was 18 feet in width, the clear roadway of or on said bridge was less than 16 feet, said clear roadway being only 15 feet 7½ inches in width at the south end and 15 feet 10 inches at the north end; that concrete curbings protruding upwardly 4½ inches above the pavement and with shoulders projecting inwardly on the ends were placed and maintained by the defendant commission upon the paved portion of the highway across said bridge and extended 13 inches or more inside of the edges of the pavement on each end of the said bridge; that the aforesaid steel trestlework of said bridge was on the exact line of the outer edges of the pavement as it approached said bridge and was no wider than the pavement north and south of the ends of said bridge, so that an automobile entering upon said bridge was in danger of colliding with said trestlework even though all the wheels of the automobile were at all times upon the pavement of said highway; that the bridge was not painted or illuminated, but was dark, dingy and weather-beaten and was permitted to remain of a color similar to that of the foliage, trees, telegraph and electric poles and the terrene on the other side of the highway although it was practicable for the defendants to have painted said bridge with a color such as aluminum or white or some other color that would have been readily distinguishable to an automobile traveler from the color of the aforesaid objects and things on either side of said highway, or to have painted the ends of said bridge with alternating stripes of black and white or aluminum so that said ends would have been readily observable to a traveler approaching the same, all as the defendants had done on other bridges located on Kansas state highways. That there were no warning signals, notices or signs posted to indicate the presence of the bridge or that a traveler was approaching the same; that there were no guardrails, fences, or posts painted with a white, aluminum or other light color located on the sides of the pavement as it approached said bridge to indicate to an approaching traveler that there was danger at the side of the highway where said bridge was located or that there were dangerous obstructions upon said highway at said place, although it was practicable for the defendants to have placed and maintained such painted guardrails or posts at said locations as the defendants had done on the approaches to other bridges on the Kansas state highway

system; that the bridge and pavement across same were dangerously narrow, forming a bottleneck on the highway; and that the concrete curbings with inwardly projecting shoulders at the ends thereof and within the lines of the outer edges of the pavement north and south of the bridge formed a dangerous obstacle in the path of vehicles traveling upon the pavement of said highway."

It will be seen that the petition was drawn on the theory that a number of circumstances and surroundings all combined to make this place in the highway a dangerous one to travelers thereon. It did not rest liability on the narrowness of the bridge alone.

The answer of the highway commission to this petition was a general denial and an allegation of contributory negligence on the part of Hill.

At the close of plaintiff's evidence defendant demurred to it. This demurrer was overruled. Defendant did not offer any evidence and the case was submitted to the jury. The jury returned a verdict for the plaintiff and answered special questions. The defendant filed a motion to set aside certain answers to special questions and for judgment notwithstanding the general verdict. After all these motions were overruled defendant appealed.

The first error argued by defendant is that the condition of the highway as shown by the evidence was not a defect as a matter of law. The position of plaintiff is that the question of whether or not this particular condition constituted a defect was a proper one to submit to the jury and there was evidence to sustain the verdict and it should not be disturbed.

These contentions require a careful examination of the evidence. We will approach the case with the idea that the entire situation—that is, narrow bridge, absence of warning signs and neutral coloring of the bridge, as well as the width of the bridge as compared with the width of the paved portion of the highway—should be considered.

As the highway approached the bridge it was paved with brick with a cement shoulder 2 feet wide on each side. The shoulders offered as smooth a surface upon which the wheels of a car might run as the brick. There was a black stripe painted down the middle of the pavement for the guidance of traffic. The entire width of the paving, including the shoulders, was 18 feet 2 inches. The bridge was an ordinary steel bridge. Its trestlework started at the level of the pavement and inclined up about 5 feet at about 45 degrees and then was flat until the other side of the bridge was reached, when it again sloped down. Running along each side of this bridge

and on a level with the pavement was a cement curbing, or what some engineers call a wheel guard. This curbing was not built up flush against the iron trestlework of the bridge, but there was a space about an inch and a half or two inches between the inside of the trestlework and the outside of the curbing. This curbing was about 4½ inches high at the south end and east side of the bridge. The width of the curbing was about 8½ inches. At each end of this curbing there was a finger, or, as the jury called it, a tab, sloping down from the top of the curbing toward the middle of the bridge. As we have seen, the width of the highway as it approached the bridge from the south was 18 feet 2 inches, including 2 feet of concrete shoulders on each side. Partly on account of the space that intervenes between the outside of the concrete shoulder described and the inside of the trestlework, and partly because the outside edge of the pavement is not quite flush with the inside edge of the trestlework, the distance between the outside edges of the curbing was 17 feet 9 inches, or 5 inches less than the width of the pavement. The distance between the inside edges of the curbing was 16 feet 4½ inches. The distance between the concrete fingers or tabs at the end of the concrete curbing was 15 feet 7½ inches on the floor of the bridge. Thus it will be seen that the space between the places where the concrete tabs reached the floor of the bridge was 2 feet 6½ inches less than the width of the pavement. These concrete curbings were known as wheel guards when the bridge was built in 1914. They constituted good bridge engineering at that time. Their purpose was to keep traffic from being deflected onto the superstructure of the bridge.

At the time of the Hill accident there was a guardrail which extended from the south end of the east trestle of the bridge south and a little east about 4 or 5 feet. Neither the plank that formed the guardrail nor the parts to which it was fastened were painted. The bridge had been black when it was built, but had become dingy. It was not painted at the time of the accident. There were no aluminum painted posts or rails along the highway at the south end of the bridge. There were no warning signs that the traveler on the highway was approaching a narrow bridge. There was no standard at the side of the bridge with reflector buttons to warn the traveler he was approaching a bridge. Since the Hill accident the trestlework has been painted in broad black-and-white alternate stripes and a post has been put in the ground just in front of the

east trestlework of the bridge with reflector buttons on it. The effect of these buttons is to catch the light from oncoming automobiles and to warn drivers that there is an obstruction immediately in the rear of the lights. A stronger, more permanent guardrail leading up to the bridge has also been built. It is painted so as to be more readily seen than the old rail. As has been stated, the bridge was located on state highway 50 just north of Merriam. On the east side of this highway and about 150 feet south of the bridge was a filling station. It was open on the night of the accident.

So that the argument of plaintiff and defendant may be understood, a statement of what happened will be made.

Mr. Hill had lived in the vicinity of the accident for several years. He used the bridge every day and sometimes several times a day. On the evening in question as he approached the bridge he was traveling, according to the only eyewitness of the tragedy, about 20 or 25 miles an hour. He was driving with one wheel on the shoulder just before he hit the bridge. One car had passed off the south end of the bridge just about the time Hill hit the bridge. His car bounced and went to the right, up the banister and tumbled over. The witness who testified to this was driving onto the north end of the bridge just as Hill hit the south end. The same witness testified:

"Just prior to the time I saw his car bounce I couldn't describe exactly where it was. All I know it was on the pavement. It was on the east—the right-hand side. It looked to me like he was either blinded, or looking for the bridge or something. He was on the slab on the outside, whatever you call it. The slab of concrete. He was riding on that as well as I could see it and he made a little turn this way (indicating toward the west) before he got to the bridge."

Immediately after the accident it was noted there were marks and fresh oil upon the slanting part of the bridge.

We shall consider the demurrer to the evidence, the motion to set aside answers to special questions and the motion for judgment on the special findings notwithstanding the general verdict, all together. When thus considered the questions are, Were all the surrounding facts and circumstances such that this court can say as a matter of law there was no defect in the highway? And second, Do all the undisputed surrounding facts and circumstances prove that plaintiff was guilty of contributory negligence as a matter of law? In *Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946, this court said:

"A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect." (p. 813.)

In *Collins v. State Highway Comm.*, 138 Kan. 629, 27 P. 2d 216, this court said:

"Where some portion of a public road is defective and the road authorities have had notice of it, it is their duty to set about its repair with reasonable promptness, and until that can be done, suitable warning signs should be placed to caution the public that the road is not in its usual condition of safety for public travel." (p. 631.)

In the case of *Phillips v. City of Wichita*, 132 Kan. 102, 294 Pac. 911, the question of liability turned upon whether a cement abutment placed in the street to guide traffic, which was struck by plaintiff's automobile, had been properly lighted. The court said:

"The city identified the projecting wall with the viaduct scheme, and produced evidence to show the whole scheme was a proper one from an engineering standpoint. . . . At the trial the only substantial issue was whether there should .have been a proper light on the narrow point of the wall, so that automobile drivers, driving at night in mist and rain, on the south side of the street near the street-railway track, could see the end of the wall, turn to the right and avoid it.

"Absence of a proper light was urged as a ground of negligence on the part of the city. It would serve no useful purpose to detail the evidence relating to that subject, which took a wide range. It is sufficient to say the unlighted point of the wall was a serious menace to eastbound automobile traffic, and the verdict finding the city guilty of negligence was abundantly sustained by evidence. . . .

"The manner in which the structure was lighted was described in detail, and the jury properly found the lighting was insufficient to reveal the dull-gray pointed end of the wall to a driver approaching it on a dark and rainy night. Nobody contended the structure ought to be lighted in a manner that would dazzle and blind automobile drivers. The kind of light which was needed was a blinking light at the end of the wall, such as the city installed after the accident, or a nondazzling red light, such as marked the ends of the street-car loading platforms." (pp. 102, 105.)

The progress that has been made in the building of hard-surface highways of all types, together with the perfection of the automobile, has presented to the courts many new problems. Not the least vexatious among°them is the oft-recurring one of whether a certain condition constitutes a defect in a highway. Obviously not every trifling imperfection can be held to come under that category. To so hold would make the highway commission the insurer of travelers upon the state highway system. Such was not intended by the legislature. (See *Gorges v. State Highway Comm.*, 135 Kan.

371, 10 P. 2d 834.) It would be fine if all the highways were absolutely smooth and devoid of curves and corners and with every bridge and culvert wide and smooth. The situation with which the commission is confronted, however, is a practical one. There are many miles of highway in the state system and it is all subject to the wear and tear of travel, to ordinary occurrences common to all roads and to the natural wear and change due to exposure to the elements. To require the highways to be kept in perfect condition at all times would place a drain on the highway fund not contemplated by the legislature. This was the reason for the holding of this court in the case of *Snyder v. State Highway Comm.*, 139 Kan. 150, 30 P. 2d 102. In that case this court held that a depression about an inch deep and 4 feet long reaching entirely across a cement highway was not a defect. In that case this court said:

"The highways of the state are intended for travel. The funds of the highway commission are intended for the construction and maintenance of a state highway system. Now, if a condition such as that described here should be held to be a defect all travel across the state would be over detours while the depressions were being repaired and all the money in the state highway fund would be expended in curing such conditions. We do not believe the safety of the traveling public requires any such holding." (p. 153.)

To the same effect is the holding of this court in *Doherty v. State Highway Comm.*, 140 Kan. 686, 38 P. 2d 95, where it was held that loose sand or chat on a highway was not a defect. There the court said:

"Gravel, or small stone, on a highway, is so common that to hold the highway commission liable for an injury resulting therefrom, as described in this petition, would be to make the maintenance of state highways prohibitive." (p. 687.)

This court approved the above conclusion and language in *Hanna v. State Highway Comm.*, 141 Kan. 135, 40 P. 2d 472, where it was held that a nail or spike left lying on a state highway was not a defect. This court adopted the rule that in cases where it is claimed that a state highway is defective, the surrounding facts and circumstances should be examined in each case rather than to announce a general rule as to what constitutes a defect. (See *Gorges v. State Highway Comm.*, 135 Kan. 371, 10 P. 2d 834.) With these rules in mind we will examine this record.

This court is not called upon to say as a matter of law that where there is a failure to light a bridge out in the country there is a defect in the highway; nor is it called upon to say that every bridge that

is somewhat narrower than the paved highway constitutes a defective highway. The practice, however, of installing warning signs along the state highways to warn of narrow bridges and dangerous curves is so universal and common as to impinge upon the notice of even a justice of this court in his secluded cloisters; nor does it appear so expensive as to be prohibitive. No burning lights were required to render that part of the highway not defective. The metal posts with the reflector buttons are a godsend to those charged with making the highways safe, but they do not do the traveling public any good unless they are erected. Here three simple changes might have been made to render this highway nondefective—a post with reflector buttons might have been installed, the superstructure of the bridge might have been painted in some outstanding manner and the guardrail to the bridge might have been painted in such manner as to make it easily seen. One thing more might have been done. The commission could have taken a sledge hammer and knocked the cement curbing off the bridge. It would have thereby rendered it 2 feet 6½ inches wider. No good reason for this curbing being on the bridge was shown at the trial of the case. We are not called upon to say that the narrow bridge or the curbing or the lack of warning signs or the narrowness of the bridge compared with the width of the pavement was a defect in the highway. We must consider all these elements together. This court held in the case of *Bobbitt v. State Highway Comm.*, 138 Kan. 487, 26 P. 2d 1115, that the highway commission had authority to change the whole route of a state highway through a county in the interest of safety of the traveling public. We cannot hold that failure to do such a simple and inexpensive thing as painting a bridge, erecting a sign or erecting and painting a guardrail does not make a highway defective where failure to do so causes a dangerous place to exist. There was sufficient evidence introduced by plaintiff that the highway was defective to make it a question for the jury.

The next question is, Did the evidence of plaintiff prove that Hill was guilty of contributory negligence as a matter of law? The jury answered three questions bearing on this. They are as follows:

"6. Had the deceased been exercising due care for his own safety and had his car under control, could he have avoided the accident? A. No.

"11. Do you find from the evidence that the accident was caused by a failure to drive carefully along the highway so as to avoid striking the trestlework of said bridge? A. No.

"12. Was the deceased driving his automobile at such a rate of speed that he could stop the same within the range of vision of his headlights? A. Yes."

Defendant first argues that the physical facts compel a conclusion that plaintiff was traveling at an excessive rate of speed. The fact that the car ran up on top of the superstructure of the bridge before it stopped is pointed as conclusive proof of this. We cannot agree with this. The only witness that testified as to speed said 20 or 25 miles an hour. The jury evidently believed this witness.

There are other facts, however, which merit a careful examination by this court. It has been noted that Hill had lived in this vicinity for several years. He had used the bridge every day in that time and sometimes several times a day. It is natural to conclude that he knew the bridge was there and that it was somewhat narrower than the pavement. Indeed the jury answered the following special question:

"If you answered question No. 1 in the affirmative, then state whether the deceased, William H. Hill, knew of such defect prior to the accident. A. Yes, on the assumption of his continued use of road."

This court has held that failure of a plaintiff to honk his horn just before entering an intersection where a collision occurred was sufficient to establish contributory negligence. (See *Martin v. Weigand*, 113 Kan. 611, 215 Pac. 1023.) In *Hanabery v. Erhardt*, 110 Kan. 715, 205 Pac. 352, this court held that a boy who ran into the street with the intention of crossing without looking for approaching automobiles was guilty of contributory negligence. The reason given for the decision was that the boy was in a place of safety and left it without looking. The conclusion and reasoning in that case was approved in *Crowder v. Williams*, 116 Kan. 241, 226 Pac. 774.

This case is analogous to those where one enters upon a railway crossing without looking and listening and is injured. In those cases this court has held the plaintiff to be guilty of contributory negligence and has denied recovery on the ground so often as not to require any citation of authorities here.

Plaintiff argues that the question of whether one is guilty of contributory negligence is one of fact for the jury. The answers to special questions 6, 11 and 12 are pointed out and it is argued that these findings acquit the plaintiff of contributory negligence. Ordinarily this is correct. However, where the facts disclosed by the evidence are not controverted and are such that reasonable

minds could reach only one conclusion thereon the question is one of law to be decided by the court and not one of fact to be determined by the jury. (See *Lilly v. Wichita Railroad & Light Co.*, 127 Kan. 527, 274 Pac. 205, and cases cited.)

Plaintiff argues that there was no evidence that Hill had ever used the road at night. It is not necessary that this be proven. The fact that he used it so often in the daytime is proof that he knew he was approaching this bridge. We have then a traveler on the highway who is familiar with it. Located 150 feet south of the bridge is a filling station and garage. It was open on the night in question. The proprietor had just finished servicing a car when the crash came. Hill had passed this filling station less than a minute before the crash. The fact that he had just passed this station and that he had just passed through the village of Merriam was some notice to him that he was approaching the bridge. He was driving with one wheel on the cement shoulder. When the light of the on-coming car flashed in his eyes, blinding him, he, knowing that he was approaching the bridge, should have stopped and waited. Had he done this he would not have hit the bridge. We have concluded that he was guilty of contributory negligence. We are not holding that every motorist should stop and wait when he is blinded by the lights of an approaching car. We only hold that this driver, who knew he was approaching a dangerous place and that his driving with one wheel on the shoulder made it certain he would hit the bridge, was guilty of conduct amounting to a failure to exercise due care under all the circumstances. (See *Ade v. City of Wichita*, 141 Kan. 497, 41 P. 2d 734.)

In this discussion we have referred to some answers to special questions. This was because we have considered the motion to set aside answers to special questions and the motions for judgment notwithstanding the general verdict together with the demurrer to the evidence.

What has been said compels the judgment of the trial court to be reversed with directions to enter judgment for defendant. It is so ordered.